**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Luis Francisco CONTRERAS–
CEBALLOS, Defendant–
Appellant.**

**No. 92–30166.**

United States Court of Appeals,
Ninth Circuit.

Submitted March 5, 1993 *.

Decided July 20, 1993.

* The parties to this case waived oral argument.

Charles E. Tulin, Anchorage, AK, for defendant-appellant.

Kristina L. Ament, Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before CANBY, and REINHARDT, Circuit Judges and TASHIMA **, District Judge.

CANBY, Circuit Judge:

Appellant Luis Francisco Contreras-Ceballos [1] appeals his conviction on a narcotics charge. Contreras-Ceballos contends that the district court erred in refusing to transfer his case from Anchorage to Juneau, Alaska. He also maintains that the district court should have suppressed evidence seized in a search of his apartment because the officers executing the search warrant did not comply with the federal knock-and-announce statute.

We affirm.

### BACKGROUND

In a search pursuant to a warrant, postal inspectors found a small amount of cocaine in a package addressed to Luis Ceballos. The inspectors resealed the package and handed it over to Contreras-Ceballos when he went to the post office to pick it up. Law enforcement officers monitoring Contreras-Ceballos later saw him enter his apartment with the package.

Having obtained a search warrant, a group of law enforcement officers comprising Alaska state troopers and United States postal inspectors went to Contreras-Ceballos's apartment. Alaska trooper Sergeant Wayne Bortz positioned himself closest to the door. Bortz listened for a moment and informed the other law enforcement officers that he could hear more than one voice inside the apartment. He drew his pistol and then knocked on the door. No immediate response followed. Bortz knocked again and this time a voice inside called out, "Who is it?" The voice belonged to Kevin See, another occupant of the apartment.

Bortz paused and then replied, "Federal Express." See called out, "Luis, it is Federal Express." See opened the door approximately twelve inches and saw Bortz, who was sporting a cap and vest that bore the Alaska State Trooper insignia. The other officers were lined up behind Bortz. At the suppression hearing, Bortz testified that, on seeing Bortz, See's "eyes got very big and he began to slam the door shut."

To prevent See from closing the door, Bortz extended his hand and stepped across the threshold. As he stepped forward, Bortz announced in a loud voice, "Troopers, search warrant," meeting the resistance of the door with his left shoulder and pushing See against the wall behind the door.

While Bortz restrained See, the other officers streamed through the doorway. Inside, they discovered Contreras-Ceballos by an open window. Contreras-Ceballos's left hand was out the window and in his right hand he held a gun.

All of these events occurred in Douglas, Alaska, which is a few miles from Juneau and approximately 570 miles from Anchorage. Before his trial on narcotics and weapons charges, Contreras-Ceballos requested that the court transfer his case from Anchorage to Juneau. Anchorage and Juneau fall within the same judicial district, the District of

---

** The Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. The indictment spells the defendant's name Louis but the appellant's name throughout his papers is spelt Luis. We have adopted the latter form for this opinion.

Alaska. 28 U.S.C. § 81A. The court denied his request.

Contreras–Ceballos also moved for suppression of all evidence seized during the search. He maintained that the officers executing the search of his apartment had violated the federal knock-and-announce statute, 18 U.S.C. § 3109. After conducting an evidentiary hearing, the district court denied the motion. Contreras–Ceballos was subsequently tried before a jury and convicted for possession of a controlled substance.

## DISCUSSION

### I. Motion for a Change of Venue

■ Contreras–Ceballos asserts that he is entitled under the Constitution to be tried in a venue nearer to the place where the alleged crime was committed than Anchorage is. Contreras–Ceballos does not dispute the fact that his trial took place within the judicial district in which the crimes with which he was charged occurred. Thus there was no literal violation of Article III, section 2, clause 3 of the Constitution, which states that criminal trials shall be held in the state where the crimes were committed. Nor was there a violation of the Sixth Amendment's guarantee of a trial by a jury "of the State and district wherein the crime shall have been committed."

■ Contreras–Ceballos would draw emanations from the penumbras of these provisions, however, supporting his right to be tried in a location that would not impose unnecessary hardship or expense, and that would ensure his being able to locate and interview witnesses and prepare for trial. He also asserts that the jury should be familiar with local conditions.

We do not read these two constitutional provisions that broadly. Whether there is some due process limit on the disruption that could be imposed upon a defendant by the choice of an inconvenient and remote venue in a huge state, we need not decide here. "If the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579,

106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). Contreras–Ceballos has not shown that he was prejudiced by the district court's refusal to transfer his trial to Juneau. Indeed, the record reflects that Contreras–Ceballos made only one motion to subpoena and transport a defense witness and that motion was granted by the district court.

In the absence of any allegation or indication that Contreras–Ceballos was prejudiced by the trial court's venue decision, we decline to reach any due process issue that may be suggested by his challenge to venue.

### II. Knock–and–Announce Statute

■ Contreras–Ceballos argues that Sergeant Bortz and the other law enforcement officers violated the knock-and-announce statute when they executed the warrant for the search of his apartment, and that the district court consequently should have suppressed the evidence seized in that search. The application of the federal knock-and-announce statute presents a question of law subject to *de novo* review. *United States v. Ramos*, 923 F.2d 1346, 1355 (9th Cir.1991). We review for clear error, however, the district court's factual findings relating to the incident. *Id.*

■ The federal knock-and-announce statute provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (1985). Under the terms of the knock-and-announce statute, federal officers executing a warrant for a search of a dwelling may not open the closed door of a dwelling until they have announced their authority and purpose and have been refused admittance. *Sabbath v. United States*, 391 U.S. 585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968); *United States v. McConney*, 728 F.2d 1195, 1206 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The requirement that

law enforcement officers give notice of their authority and purpose prior to forcing entry to execute a warrant serves three purposes: it protects citizens and law enforcement officers from violence; it protects individual privacy rights; and it protects against needless destruction of private property. *United States v. Little,* 753 F.2d 1420, 1435 (9th Cir.1984).

██ This court has not squarely faced the question whether use of force after achieving, by means of deception, a voluntary partial opening of an entryway implicates the knock-and-announce statute. In earlier decisions, however, we have held that a law enforcement officer's use of a ruse to gain admittance does not implicate section 3109 because it entails no breaking. *Dickey v. United States,* 332 F.2d 773, 777–78 (9th Cir.), *cert. denied,* 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964); *Leahy v. United States,* 272 F.2d 487, 489 (9th Cir.1959), *cert. granted,* 363 U.S. 810, 80 S.Ct. 1246, 4 L.Ed.2d 1152 (1960), and *cert. dismissed,* 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961).

These decisions leave us with little alternative but to uphold the action of the officers in this case. Under *Dickey* and *Leahy,* the officers were not in violation of section 3109 when See opened the door in response to the officers' ruse. The officers then stated their identity, authority and purpose. At that point, the purposes of section 3109 had been fully served. The warrant held by the officers entitled them to search whether or not their search was resisted. Their use of force to keep the door open, and to enter, did not implicate section 3109. *Accord United States v. Salter,* 815 F.2d 1150, 1152 (7th Cir.1987). To rule otherwise would dictate a nonsensical procedure in which the officers, after having employed a permissible ruse to cause the door to be opened, must permit it to be shut by the occupants so that the officers could then knock, reannounce, and open the door forcibly if refused admittance.

We AFFIRM Contreras–Ceballos's conviction.