924 P.2d 181

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Henry A. DIXON, aka Henry Lee Flazer, Defendant–Appellee.**

No. 19147.

Supreme Court of Hawai'i.

Sept. 10, 1996.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellant.

Jonathan J. Ezer, on the briefs, Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Plaintiff-appellant State of Hawai'i (the prosecution) appeals from the circuit court's July 5, 1995 findings of fact (FOF), conclusions of law (COL) and order granting defendant-appellee Henry A. Dixon's (Dixon), aka Henry Lee Flazer, motion to suppress evidence retrieved by the Honolulu Police Department (HPD) during the execution of a valid arrest warrant. The prosecution argues that the trial court erred, as a matter of law, when it concluded that the HPD officers' entry into Dixon's hotel room was illegal. The prosecution maintains that entry was lawful because: (1) employing a ruse to effect a voluntary and nonviolent opening of the hotel room door did not implicate or violate Hawai'i Revised Statutes (HRS) § 803–11 (1993); and (2) Dixon's constitutional protections were not impaired.

As discussed below, we agree with the proposition that entrance gained by the use of a ruse to execute a valid warrant is permissible as long as force is not involved. We also agree that Dixon's constitutional protections were not impaired by the use of a ruse because the purposes of the "knock and announce" rule, which are to: (1) reduce the potential of violence to both occupants and police resulting from an unannounced entry; (2) prevent unnecessary property damage; and (3) protect the occupant's right of privacy, were not frustrated. Accordingly, we reverse the circuit court's order suppressing the evidence.

## I. BACKGROUND

At the hearing on Dixon's motion to suppress evidence, the prosecution and Dixon agreed that the police report of HPD Officer Philip V. Camero constituted the undisputed facts of the case. The court accepted the parties' stipulation and received the four-

page report into evidence. The following are the facts as stated in the report.

On January 28, 1992, Parole Officer Collin Fukunaga informed HPD Officer Stuart Yano that Dixon had violated the conditions of his parole and that a parole revocation warrant had been issued for Dixon's arrest. Officer Yano relayed this information to Officer Camero, who obtained a "mug" photo of Dixon and learned that Dixon's aliases were "Henry Lee Flazer" or "Henry Lee Frazer."

On January 31, 1992, at 1:00 a.m., the police received information that Dixon might be staying at a hotel in the airport area and that he was planning to leave the island sometime that day. HPD Officer Thomas Toyozaki made telephonic inquiries and, at 2:45 a.m., determined that a man matching Dixon's physical description was registered at the Plaza Hotel under the name of Henry Lee Flazer.

Shortly thereafter, seven HPD officers arrived at the Plaza Hotel. At approximately 3:40 a.m., Officers Toyozaki, Yano, and Camero positioned themselves at either side of the door to room No. 1104. Officer Camero was in civilian clothes, wearing his shoulder holster, and displaying a police badge on a chain hung around his neck. Through the peephole in the hotel room door, Officer Camero observed that there was a light on inside the room, and he could also hear voices coming from within the room.

Brian DeMusis, a Plaza Hotel security guard, was positioned directly in front of the hotel room door. DeMusis knocked on the door, and, when a female voice asked "Who is it?," DeMusis responded that he was the hotel's security guard. The female asked "What do you want?," and DeMusis replied that he was there to check on the air conditioning. Officer Camero heard the door being unlocked from the inside, and, as the door swung open, he saw a black male, whom he recognized from the police photograph to be Dixon, standing in the hallway behind the female.

Officers Yano and Camero entered the room simultaneously, announcing "in an assertive tone of voice" that they were the police and ordering Dixon to get down. "As Officer Yano and [Officer Camero] spoke [they] moved directly towards him." Officer Camero pushed Dixon onto one of the beds in the room and Officer Yano handcuffed him. Once Dixon was handcuffed, Officer Camero noticed a clear plastic ziplock bag, containing a white powdery substance resembling cocaine, on the bed where Dixon had been handcuffed. Five more transparent bags containing white powder were observed on the nightstand. Officer Camero also noticed a large amount of currency and a photo I.D. of Dixon, held together with a rubber band, lying on the floor between the two beds. On the second bed was a black brief case with a numbered combination lock and a grey colored scanner with no antenna.[1]

On November 15, 1994, Dixon was indicted for Promoting a Dangerous Drug in the First Degree, in violation of HRS § 712–1241(1)(a)(i) (1993), Promoting a Dangerous Drug in the Second Degree, in violation of HRS § 712–1242(1)(b)(i) (1993), and Unlawful Use of Drug Paraphernalia, in violation of HRS § 329–43.5(a) (1993).

On May 10, 1995, Dixon filed a motion to suppress evidence, contending that, because the HPD officers failed to follow the "knock and announce" procedures of HRS § 803–11 before entering the hotel room, their entry was unlawful and in violation of his right to privacy; thus, Dixon contends that all evidence obtained from the unlawful entry must be suppressed. HRS § 803–11 provides that:

> Whenever it is necessary to enter a house to arrest an offender, and entrance is refused, the officer or person making the arrest may force an entrance by breaking doors or other barriers. But before breaking any door, the officer or person shall first demand entrance in a loud voice, and state that the officer or person is the bear-

---

1.  Although not mentioned in the police report, the record indicates that, in addition to the briefcase, there was a brown clutch bag on the second bed. Both the briefcase and the clutch bag were seized, pending a search warrant. At the time the briefcase and clutch bag were searched, pursuant to a valid search warrant, officers found, *inter alia*, coins in envelopes, more white powder resembling cocaine, and two hypodermic needles in a biohazard container.

er of a warrant of arrest; or if it is a case in which arrest is lawful without warrant, the officer or person shall substantially state that information in an audible voice.

At the hearing on Dixon's motion, the motions court orally granted the motion, stating:

> The Court does believe that under 803–11 the reasonable inference and interpretation is that initially the police are required to knock and announce their presence, identifying themselves and the purpose for which they're there, and, in this case, to execute an arrest warrant. True this is not a search warrant but nevertheless, clearly, I think 803–11 does indicate that there has to be a knock-and-announcing before entry is made and that 803–11 then goes on to prescribe the procedures to be used if entry is refused but—but a knock-and-announce is—is required.
>
> Also, this State Constitution has a provision that is not in the United States Constitution. That is the right to privacy. And I think under that provision as well the defendant is entitled to—or the police are required to knock and announce their presence in executing the warrant. And in this case, since there was no such knocking and announcing, the Court does believe that the H.P.D.'s entry into this hotel room was improper and illegal and, as such then, the motion to suppress is granted.

Subsequent to the filing of the court's FOF, COL and Order, the prosecution timely appealed,[2] challenging the following COL:

> 2. Under Hawaii Revised Statute[s] Section 803–11 and the reasonable inferences therefrom, police are required to "knock and announce" who they are and their purpose for entering, prior to entry.
>
> 3. The Hawaii State Constitution provides for the Right to Privacy which is consistent with the "knock and announce" doctrine.
>
> 4. The Honolulu Police Department violated the procedures as set forth in Hawaii Revised Statute[s] [Section] 803–11[,]

since they failed to knock and announce prior to entering.

> 5. The entry into room 1104 of the Plaza Hotel was illegal.
>
> 6. All items seized as a result of the illegal entry must be suppressed.

## II. DISCUSSION

"A court's COL are reviewed under the right/wrong standard. Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Naeole*, 80 Hawai'i 419, 422, 910 P.2d 732, 735 (1996) (quoting *State v. Meyer*, 78 Hawai'i 308, 311, 893 P.2d 159, 162 (1995)).

### A. There was no "breaking" within the meaning of HRS § 803–11.

■ The issue in this case—whether use of a ruse, without force or threat of force, constitutes a "breaking" within the meaning of the "knock and announce" statute, HRS § 803–11, requiring HPD officers to announce their presence and purpose, and demand entry—is one of first impression in this jurisdiction.

"The starting point in statutory construction is to determine the legislative intent from the language of the statute itself." *State v. Garcia*, 77 Hawai'i 461, 465, 887 P.2d 671, 675 (App.1995) (citing *State v. Ortiz*, 74 Haw. 343, 351, 845 P.2d 547, 551 (1993)). By its plain language, HRS § 803–11 provides that an officer or other person making an arrest "may force an entrance by breaking doors or other barriers[,]", but requires that, "before breaking any door, the officer or person [making the arrest] shall first demand entrance in a loud clear voice, and state that the officer or person is the bearer of a warrant of arrest[.]" Implicit in the motions court's determination that the officers violated the statute by failing to knock and announce before entering the hotel room is the conclusion that entry through a door, voluntarily opened in response to a ruse, is tanta-

---

2. HRS § 641–13 (1993) provides, in pertinent part, that "[a]n appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to Chapter 602, in all criminal cases, in the following instances: ... (7) From a pretrial order granting a motion for the suppression of evidence[.]"

mount to "forc[ing] an entrance by breaking doors[.]" HRS § 803–11.

The knock and announce statute, HRS § 803–11, appeared virtually verbatim in the 1869 Penal Code of the Hawaiian Kingdom,[3] and there is no legislative history from which we can discern the intended meaning of "force an entrance" or "breaking." The United States Supreme Court, called upon to interpret the federal counterpart of the knock and announce statute, 18 U.S.C. § 3109,[4] in *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), looked to the common law knock and announce rule to interpret the statute. In *Miller*, the police, without a warrant, knocked on the defendant's door and, in response to his inquiry, said in a low voice that they were the police. The defendant pushed open the door partway, which was attached to the door chain, and, upon seeing the officers, the defendant attempted to pull the door closed. The officers put their hands inside the door, "pulled and ripped the chain off, and entered[,]" without stating their purpose or demanding entrance. *Id.* at 303–04, 78 S.Ct. at 1192–93.

The Court, examining the common law origins of the knock and announce rule determined that it

> was pronounced in 1603 in *Semayne's Case*, 5 Co. Rep. 91a, 11 E.R.C. 629, 77 Eng. Repr. 194, at 195: "In all cases where

the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. *But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors. ...*" (Emphasis supplied.)

*Id.* at 308, 78 S.Ct. at 1195. The *Miller* Court explained that "[t]he requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given a grudging application[,]" *id.* at 313, 78 S.Ct. at 1198, and held that, because the defendant did not receive the requisite notice before the officers broke the door to invade his home, the arrest was unlawful. *Id.* at 313–14, 78 S.Ct. at 1197–98.

The United States Supreme Court ruled directly on the meaning of "breaking," within the context of 18 U.S.C. § 3109, in *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). In that case, U.S. Customs agents knocked on the apartment door of a suspect. When, after a few seconds, they received no response, they opened the unlocked door and entered the apartment, where they arrested the suspect and seized a package of cocaine. On appeal from the conviction, the Ninth Circuit Court of Appeals ruled that the officers, in effecting en-

---

**3.** *See* P.C. 1869, c 49 § 10. HRS § 803–11 differs only in that it was made gender neutral.

**4.** Section 3109 provides in pertinent part that "[t]he officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." The statute, although referring explicitly to the execution of a search warrant, has also been held to apply to the execution of arrest warrants and warrantless arrests. *See, e.g., Leahy v. United States*, 272 F.2d 487, 489 (9th Cir.1960) (citing *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958)).

In *Garcia*, the Intermediate Court of Appeals (ICA) held that cases interpreting 18 U.S.C. § 3109 were not applicable to the determination whether officers who announced their presence and purpose, but did not explicitly "demand en-

trance" before breaking two doors, were in violation of HRS § 803–37 (1993), which provides in pertinent part that, before an officer may break doors to execute a search warrant, he or she "must declare the officer's office and the officer's business, and demand entrance." HRS § 803–37. The ICA reasoned that 18 U.S.C. § 3109 differs significantly from HRS § 803–37 because the federal statute does not affirmatively require the officers to "demand entrance." 77 Hawai'i at 466, 887 P.2d at 676.

The issue in this case, however, is not whether HRS § 803–11 also requires officers executing an arrest warrant to demand entrance; that requirement is explicit in the statute and was noted in *Garcia. Id.* at 466 n. 7, 887 P.2d at 676 n. 7. The issue, rather, is whether, under the circumstances of this case, the officers forced entry by "breaking doors," thus implicating the requirements of HRS § 803–11. Because 18 U.S.C. § 3109 also refers to "break[ing] open any outer or inner door," cases interpreting the federal statute are clearly relevant to our determination of this case.

try by opening the closed—but unlocked—door, did not "break open" the door and therefore were not required to comply with the knock and announce requirements of 18 U.S.C. § 3109. *Id.* at 587–88, 88 S.Ct. at 1756–57 (citing 380 F.2d 108). The Supreme Court reversed. Reviewing *Miller,* the Court opined that:

> Considering the purposes of § 3109, it would indeed be a "grudging application" to hold, as the Government urges, that the use of "force" is an indispensable element of the statute. To be sure, the statute uses the phrase "break open" and that connotes some use of force. But linguistic analysis seldom is adequate when a statute is designed to incorporate fundamental values and the ongoing development of the common law. Thus, the California Supreme Court has recently interpreted the common-law rule of announcement codified in a state statute identical in relevant terms to § 3109 to apply to an entry by police through a closed but unlocked door. And it has been held that § 3109 applies to entries effected by the use of a passkey, which requires no more force than does the turning of a doorknob. *An unannounced intrusion into a dwelling—what § 3109 basically proscribes*—is no less an unannounced intrusion whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door.

*Id.* at 589–90, 88 S.Ct. at 1758 (emphasis added) (citation and footnotes omitted). In a footnote, the Court commented that the development of the law of burglary provides a useful analogy, stating that "a forcible entry has generally been eliminated as an element of that crime under statutes using the word 'break,' or similar words," *id.* at 589 n. 5, 88 S.Ct. at 1758 n. 5, and, quoting a commentator on the law of arrest, the Court further stated that "[w]hat constitutes 'breaking' seems to be the same as in burglary: lifting a latch, turning a door knob, unhooking a chain or hasp, removing a prop to, or pushing open, a closed door of entrance to the house,—even a closed screen door ... is a breaking...." *Id.* (citation and internal quotation marks omitted) (ellipses in origi-

nal). In another footnote particularly germane to the instant case, the Court noted that "[w]e do not deal here with entries obtained by ruse, which have been viewed as involving no 'breaking.'" *Id.* at 590 n. 7, 88 S.Ct. at 1758 n. 7 (citing, *inter alia, Smith v. United States,* 357 F.2d 486, 488 n. 1 (5th Cir.1966), and *Leahy v. United States,* 272 F.2d 487, 489 (9th Cir.1959), *cert. granted,* 363 U.S. 810, 80 S.Ct. 1246, 4 L.Ed.2d 1152, *cert. dismissed,* 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1960)).

Federal courts interpreting 18 U.S.C. § 3109 have held, virtually universally, that the use of deception, without force, to effect entry into a house is not a "breaking" within the meaning of the statute, and, thus, there is no requirement to knock and announce. In *Leahy,* a revenue agent, with a valid arrest warrant, gained entrance to appellant's home by purporting to be an agent from the County Assessor's office. Once inside, he and fellow agents arrested the appellant, searched the premises, and seized certain articles. The Ninth Circuit held that the arrest was made in accordance with law, and the search and seizure were incident to a lawful arrest. 272 F.2d at 490. After reciting the knock and announce requirements of 18 U.S.C. § 3109, as explained in *Miller,* the Ninth Circuit ruled that "[t]here existed no such requirements in the instant case since [the agents] did not 'break open' a door or window. Misrepresentation of identity in order to gain admittance is not a breaking within the meaning of the statute." *Id.* at 489 (citations omitted). The *Leahy* court distinguished *Miller* and *Gatewood v. United States,* 209 F.2d 789 (D.C.Cir.1953), both cases in which officers, to effect an arrest or execute a search warrant, forced open a door that the occupant had voluntarily opened, but was then attempting to close. "It will be noted that the element of force was present in each of the cited cases which distinguishes them from the instant case." *Id.* at 489.

As authority for the proposition that deception alone does not constitute "breaking," the *Leahy* court, like the *Miller* Court, turned to the common law:

> [I]n *Rex v. Backhouse,* 98 Eng. Rep. 533, Lofft, 62 (1763) an officer gained entrance

into Backhouse's home on the pretense of having a note which Backhouse would be glad to see. Once inside, he made the arrest, "... and Backhouse said his house was his castle" and aimed what the officer took for a pistol (actually a sugar hammer). The officer fled. Lord Mansfield in holding Backhouse guilty of assault necessarily held the entry by the officer legal. Hence the distinction exists in common law that falsehood alone does not invalidate an arrest and applying that distinction here we have a different picture than presented in *Gatewood v. United States, supra,* where there was fraud followed by force.

*Id.* at 490 (citation omitted). In a concurring opinion, Judge Pope commented that "[m]y research has failed to turn up any case equating a ruse or fraud with force." *Id.* at 491 (Pope, J., concurring).

In *Dickey v. United States,* 332 F.2d 773 (9th Cir.), *cert. denied,* 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964), the appellant (Dickey) appealed his conviction of a narcotics violation on the grounds that, *inter alia,* the package of narcotics was erroneously received into evidence because it was seized pursuant to an unlawful arrest where the arresting officers failed to follow the procedures required by 18 U.S.C. § 3109. In *Dickey,* three federal agents, acting on information from an informant that Dickey was in a hotel room ready to sell narcotics to the informant, positioned themselves in front of the hotel room door and attempted to use a passkey which they had obtained from the hotel management. Before the agent could turn the key, however, Dickey heard the noise and asked "Who's there?" An agent, disguising his voice, gave the name of the informant. Dickey opened the door, and the agents saw him toss a package that he was holding to a female in the room, who was later identified as Dickey's wife. The agents entered the room without invitation, recovered the package, and, after identifying the contents as heroin, arrested Dickey and his wife. Only after the arrest did they identify themselves as agents of the Federal Bureau of Narcotics. *Id.* at 777. The court explained that,

[h]ad entry into Dickey's hotel room been gained by use of the pass key, this would have been a "breaking" of the door within the meaning of section 3109. But entry was not gained by that means and the noise made when the key was inserted into the lock had no more significance than a knock at the door.

Had the officers obtained, by ruse, a partial opening of Dickey's door, and if they had then forced open the door the rest of the way to gain entrance, this would have been a "breaking" in the sense of section 3109. But the employment of a ruse to obtain the full opening of the Dickeys' door unassociated with force, was not a "breaking." And since the door was then wide open, the subsequent entry into Dickey's room for the purpose of arresting him did not involve a "breaking" of the door.

*Id.* at 777–778 (citations and footnotes omitted). Therefore, the *Dickey* court held that there was no necessity for the officers to notify Dickey of their authority and purpose before entering. *Id.* In *United States v. Beale,* 436 F.2d 573 (5th Cir.) *rev'd on rehearing,* 445 F.2d 977 (1971), *cert. denied,* 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972), a case which is factually indistinguishable from the instant case, the defendant-appellant (appellant) was arrested in his hotel room by federal agents who gained admission to his room by having the hotel manager knock on appellant's door, announcing only his (the manager's) presence. When appellant opened the door, the agents entered, without giving notice of their authority and purpose, and made the arrest. In a search incident to the arrest, evidence was recovered which was later admitted at trial. 436 F.2d at 574.

In determining whether entrance obtained by a ruse may be considered a "breaking" within the meaning of 18 U.S.C. § 3109, the *Beale* court acknowledged that "[t]his court has held that entrance gained by fraud or other use of deception for purpose of effecting an arrest is permissible as long as force is not involved. That is to say, such an entrance is not a breaking within the meaning of § 3109." *Id.* (citations omitted). The

*Beale* court, however, was persuaded that the United States Supreme Court's rationale in the more recently decided *Sabbath* case compelled a different result and reversed appellant's conviction, holding that "the agents' failure to announce their purpose and identity invalidates appellant's arrest and makes inadmissible the fruits of the search made incident thereto." *Id.* at 575.

On rehearing, the same panel, with one dissent, reversed its original decision "insofar as it held that the underlying rationale of *Sabbath* ... required that we hold that entry secured by deception and without use of force is governed by 18 U.S.C. § 3109" and affirmed appellant's conviction. 445 F.2d at 977–78. The *Beale* court cited a string of pre-*Sabbath* cases that held that entry obtained by deception, without force, was not a "breaking" and stated that it was "impressed" with the discussion of the common law history in *Leahy. Id.* at 978. Reexamining the language and structure of *Sabbath*, the court concluded that, although *Sabbath* disclaimed the use of force as a necessary element of § 3109, "the analysis is in terms of *some* force, albeit minimal, in the sense of physical action by the officer to remove the barrier that prevents his [or her] entry." *Id.* Therefore, *Sabbath* "left undisturbed the existent distinction between entry where some force is employed and entry where force is not an element at all." *Id.* The *Beale* court also cited *United States v. Syler*, 430 F.2d 68 (7th Cir.1970), as a post-*Sabbath* case reaffirming the legality of the ruse entry. *Id.*

In *Syler*, agents with a valid arrest warrant approached appellant's front door simultaneously with a serviceman who was there to connect the gas. The front door to the house was open, but the screen door was closed. The serviceman knocked on the door and called out, "Gas man." The serviceman then left at the agents' instructions. When no one came to the door, one of the agents yelled "gas man," and appellant unlatched and partially opened the screen door. The agents then pulled the door open further and entered. The court held that there was no "breaking" within the meaning of 18 U.S.C. § 3109 because the agent merely completed the operation voluntarily initiated by appellant and "[n]o attempt was made to bar his way and no force was applied in gaining entry." *Id.* at 70. *See also United States v. Raines*, 536 F.2d 796, 800 (8th Cir.) ("A police entry into a private home by invitation without force, though the invitation be obtained by ruse, is not a breaking and does not invoke the common law requirement of prior announcement of authority and purpose, codified in § 3109."), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *United States v. Salter*, 815 F.2d 1150 (7th Cir.1987) (holding that where officer, identifying himself as hotel clerk, telephoned appellant requesting her to come to hotel desk, and other officers positioned outside hotel room door waited until appellant opened door, prevented her from closing door, and entered hotel room, there was no "intrusion," and section 3109 was not implicated by entry through an open door); *United States v. Contreras–Ceballos*, 999 F.2d 432 (9th Cir. 1993) (officer's use of force to keep open door that was voluntarily opened in response to officer's ruse, and to enter, did not implicate section 3109).

State courts, interpreting either knock and announce statutes or the common law knock and announce rule, have also generally held that an entry obtained by ruse, without use of force, is not a breaking requiring officers to first announce their authority and purpose. *See, e.g., State v. Iverson*, 272 N.W.2d 1 (Iowa 1978); *Palmer v. State*, 426 So.2d 950 (Ala.Cr.App.1983); *Ryals v. State*, 498 So.2d 1365 (Fla.App.1986).

In *Commonwealth v. Duncan*, 257 Pa.Super. 277, 390 A.2d 820 (1978), the Pennsylvania Superior court adopted the rule that, under the Pennsylvania knock and announce statute, "a ruse or misrepresentation, as allegedly occurred in the instant case, is permissible in the execution of a search warrant if, once a person voluntarily opens the door, the police then announce their authority and purpose prior to entry and do not use force where exigent circumstances do not require it." *Id.*, 390 A.2d at 825. The Pennsylvania statute, however, differed significantly from HRS § 803–11. It provided in pertinent part that "[a] law enforcement officer executing a search warrant shall, before entry, give, or

make reasonable effort to give, notice of his [or her] identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his [or her] immediate forcible entry." *Id.* at 824 (quoting Pa. R.Crim. P. 2007(a)). *See also State v. Myers*, 102 Wash.2d 548, 689 P.2d 38, 41 (1984) (Washington knock and announce statute "is applicable not only when force is used to obtain entry, but whenever police enter without valid permission.").

The variations in interpretation of similar knock and announce statutes relate, essentially, to the element of force. The *Sabbath* Court stated that the use of force was not required to find a breaking, but rather that 18 U.S.C. § 3109 proscribed any unannounced intrusion. As the Seventh Circuit noted in *Beale*, however, all of the examples of breaking mentioned in *Sabbath* involved some force. Federal courts, even after *Sabbath*, generally continue to hold that, where there is no force used to obtain entry, 18 U.S.C. § 3109 is not implicated, and, therefore, there is no requirement for officers to knock and announce before entry. *See, e.g., Beale, Syler, Raines*, and *Contreras-Ceballos*. Some state courts, however, interpret their knock and announce statutes as requiring officers to knock and announce even in the absence of forcible entry. *See, e.g., Duncan* and *Myers*.

■ Unlike 18 U.S.C. § 3109 or the state knock and announce statutes interpreted in the cited cases, HRS § 803–11 expressly refers to the use of force: "the officer or person making the arrest *may force an entrance by breaking doors or other barriers* [,]" but only after complying with the knock and announce requirements. (Emphasis added.) Thus, it would be inconsistent with the plain language of the statute to interpret the use of a ruse to effect voluntary opening of the door, through which the officers enter without any use of force, as a breaking, requiring compliance with the knock and announce requirements of HRS § 803–11. We hold, therefore, in accordance with the plain

language of the statute and the great weight of authority, that HRS § 803–11 is not implicated where entry is gained through an open door without use of force.

■ Dixon argues that, even if that is the case, there was force used in this case because, once the door to the hotel room was voluntarily opened, "the officers had to use some force to gain entrance into the room. Officer Camero and Officer Yano needed to get past the security officer, the woman in the hallway and a partially closed door in order to gain entrance into the room which housed the Defendant." The motions court made no finding of fact, however, that force was used to gain entry, and nothing in the stipulated facts would have supported such a finding. Officer Camero's police report states only that "[t]he door was then unlocked from the inside and as it began to open from my position I could see [Dixon].... Both Officer Yano and I entered the room simultaneously." The motions court did not conclude that the officers violated HRS § 803–11 because they used force to gain entry without first knocking and announcing; rather, the court apparently concluded that compliance with HRS § 803–11 is required for *any* entry, whether or not "breaking" or force is involved. For the reasons stated above, we hold that the motions court's COL 2 and 4, to the extent they conclude that HRS § 803–11 requires announcement and demand for entry even in the absence of a "breaking" or use of force, are "wrong."

### B. *Dixon's Constitutional Protections Were Not Violated.*

■ Although the motions court's order granted Dixon's motion to suppress based upon its interpretation of HRS § 803–11, it also concluded that "[t]he Hawaii State Constitution provides for the Right to Privacy which is consistent with the 'knock and announce' doctrine." COL 3. Both article I, section 7 of the Hawai'i Constitution [5] and

---

**5.** Article I, section 7 of the Hawai'i Constitution states:

The right of the people to be secure in their persons, houses, papers and effects against un-

reasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly de-

the fourth amendment to the United States Constitution [6] provide for the right of the people to be secure in their houses against unreasonable searches and seizures, and article I, section 7 additionally protects specifically against unreasonable invasions of privacy. The United States Supreme Court recently held that the common law principle of announcement is an element of the reasonableness inquiry under the fourth amendment. *Wilson v. Arkansas,* — U.S. —, — – —, 115 S.Ct. 1914, 1916–17, 131 L.Ed.2d 976 (1995).[7] "That is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id.* at —, 115 S.Ct. at 1918.

Even before *Wilson,* several jurisdictions assumed that the knock and announce rule implicated the fourth amendment and, in some cases, specifically addressed whether the seizure of evidence pursuant to an entry obtained by ruse, without announcement, was constitutionally unreasonable. The analysis of the fourth amendment reasonableness of a "ruse entry" by the Washington Supreme Court in *Myers* represents the approach taken by most courts considering the issue. In *Myers,* the police used a fictitious arrest warrant in order to gain entry to execute a valid search warrant. In response to a police officer's knock, the defendant opened the wooden inner door to his house, leaving the wrought iron gate closed and locked. The officers identified themselves, informed the

defendant that they had a traffic warrant for his arrest, and in response to the defendant's claim that it must be a mistake, asked if they could come in and use the phone to clear things up. Once inside the gate, the officers advised defendant that they had a search warrant. The subsequent search produced heroin, drug paraphernalia, and cash, and the defendant was arrested. 689 P.2d at 40.

The Washington Supreme Court reasoned that:

> The guiding factor in determining whether a ruse entry, to execute a search warrant, constitutes a "breaking" under the Fourth Amendment should be whether the tactic frustrates the purposes of the "knock and announce" rule. Those purposes are: (1) reduction of potential violence to both occupants and police resulting from an unannounced entry, (2) prevention of unnecessary property damage, and (3) protection of an occupant's right to privacy.
>
> It appears obvious that a ruse entry, especially when the deception is not realized until after the entry has been accomplished, actually promotes both the purpose of preventing violent confrontation between the officer and the surprised occupant and that of preventing unnecessary property damage. Ruse entries such as that in the present case lack the element of surprise, thereby reducing the chance of confrontation.

*Id.* at 42 (citations omitted). With respect to the third purpose of the knock and announce rule, protecting the privacy of the occupant, the court explained that

scribing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

**6.** The fourth amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**7.** The Court had previously suggested as much in *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), in which a plurality affirmed

the decision of the California District Court of Appeal, which had affirmed the defendants' conviction. The Court in *Ker* held that an unannounced entry was reasonable under the fourth amendment, applicable to the states through the fourteenth amendment, and evidence seized pursuant to the unannounced entry was admissible, where the unannounced entry was sanctioned by the law of California under a recognized exception to the knock and announce rule. *Id.* at 40–41, 83 S.Ct. at 1633–34. In *Wilson,* the Court pointed out that *Ker* did not address "the antecedent question whether the lack of announcement might render a search unreasonable under other circumstances." — U.S. at —, 115 S.Ct. at 1918.

[t]he occupant's right of privacy is severely limited where the police have satisfied the Fourth Amendment's probable cause and warrant requirements. In such a case, the officers possess the authority to intrude upon the privacy of the home regardless of the occupant's wishes and irrespective of his activity at the time of the intrusion.... Ruse entries are invariably characterized by some degree of advance notice; the occupant is expecting an entry. The entry is consensual, if the ruse works.

*Id.* at 42–43 (citations omitted). The court held that, because the underlying purpose of protecting the privacy of the home was not threatened by ruse entries, "the mere fact that a ruse has been used does not violate a defendant's right to be free from unreasonable search and seizure." *Id.* at 43. *See also State v. Moss,* 172 Wis.2d 110, 492 N.W.2d 627 (1992) (holding that use of a ruse to effect entry in the execution of a search warrant does not violate the fourth amendment, following *Myers*' analysis), *cert. denied,* 507 U.S. 977, 113 S.Ct. 1428, 122 L.Ed.2d 796 (1993); *Iverson,* 272 N.W.2d at 5 (holding that use of ruse to effect entry not constitutionally unreasonable where officers had valid search warrant, no force was threatened or used, and no "breaking" occurred because invasion of privacy was minimal); *Leahy,* 272 F.2d at 490 ("[t]here is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant.").[8]

■ The reasoning of cases such as *Myers* and *Moss* is persuasive. Where the purposes of the knock and announce rule are not frustrated, and may, indeed, be furthered by the use of a ruse to obtain entry to execute a valid warrant, the tactic is not constitutionally unreasonable and, therefore, not violative of fourth amendment protections.

■ As the motions court noted, however, article I, section 7 of the Hawai'i Constitution provides broader protection than the

fourth amendment to the United States Constitution because it also protects against unreasonable invasions of privacy. Nonetheless, because protection of the occupant's privacy is one of the purposes of the knock and announce rule considered under the fourth amendment inquiry, the result does not differ. The privacy interest protected by the knock and announce rule is minimal, inasmuch as it is only the occupant's privacy for the span of time between the announcement and the actual entry that is implicated. Where the entry is obtained by ruse, there is no unwarranted intrusion on the occupant's privacy because the occupant has voluntarily surrendered his or her privacy by opening the door. We hold, therefore, that the use by the police of a ruse to effect the voluntary opening of a door and the subsequent entry without use of force for the purpose of executing a lawful arrest warrant, is reasonable under both the Hawai'i and United States Constitutions. Accordingly, the motions court's COL 5 and 6 are "wrong."

### C. *The suppression order was wrongly granted.*

■ Because the officers' entry into the hotel room to execute the valid arrest warrant violated neither HRS § 803–11 nor Dixon's constitutional protections, it was not "illegal"; thus, the seizure of the cocaine, cash, and scanner inadvertently observed therein was permissible under the plain view doctrine. "[W]here a governmental agent is engaged in a lawful intrusion and inadvertently observes evidence of a crime, the seizure of such evidence does not require any further constitutional protections." *Meyer,* 78 Hawai'i at 317, 893 P.2d at 168. "[T]hree factors are required to merit a legitimate plain view observation: (1) prior justification for the intrusion; (2) inadvertent discovery; and (3) probable cause to believe the item is evidence of a crime or contraband." *Id.* at 314, 893 P.2d at 165 (citations omitted). In

---

8. We note that, in other contexts, we have held that use of deception by police is not *per se* unconstitutional. *See State v. Kelekolio,* 74 Haw. 479, 849 P.2d 58 (1993) (employment by police of deliberate falsehoods regarding existence of incriminating evidence against defendant did not, under the totality of the circumstances, render subsequent confession inadmissible); *State v. Agrabante,* 73 Haw. 179, 830 P.2d 492 (1992) (undercover officer's conduct of supplying and selling cocaine as part of "reverse buy" operation was not so outrageous as to shock the conscience and deprive defendant of due process).

this case, all three factors are satisfied: (1) the officers' intrusion pursuant to a valid arrest warrant was justified; (2) the officers' discovery of the cocaine in transparent containers on the same bed on which Dixon was being handcuffed and on the nightstand, the roll of cash on the floor between the two beds, and the scanner on the second bed was inadvertent; and (3) the officers had probable cause to believe that the white powder in the clear plastic packages was narcotics and that the narcotics, cash, and scanner were evidence of a crime. These items were therefore admissible, *State v. Stachler*, 58 Haw. 412, 417, 570 P.2d 1323, 1327 (1977), and the motion to suppress was wrongly granted.

The items found in the clutch bag and the briefcase were also wrongly suppressed. The police appropriately secured the bag and the briefcase for safekeeping and searched them only after obtaining a search warrant. *See, e.g., State v. Wong*, 68 Haw. 221, 224, 708 P.2d 825, 829 (1985); *State v. Ching*, 67 Haw. 107, 112, 678 P.2d 1088, 1093 (1984).

### III.  *CONCLUSION*

Based on the foregoing, we hold that the seizure of evidence from Dixon's hotel room was not in violation of HRS § 803–11 or of Dixon's federal or state constitutional rights. Accordingly, we reverse the circuit court's order suppressing evidence and remand this case for further proceedings.