993 P.2d 1191

**STATE of Hawai'i, Petitioner–Appellant,**

v.

**Jasmine K. ELENEKI, Respondent–Appellee.**

No. 21761.

Supreme Court of Hawai'i.

Feb. 29, 2000.

Richard K. Minatoya, Deputy Prosecuting Attorney, on the briefs, for petitioner-appellant on the writ.

Vickery J. Russell, on the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Circuit Court Judge VICTORIA S. MARKS, Assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

Petitioner-appellant State of Hawai'i (the prosecution) applies to this court for a writ of certiorari to review the opinion of the Intermediate Court of Appeals (ICA) in *State v. Eleneki*, 92 Hawai'i 688, 994 P.2d 620 (App. 1999) (mem.op.) [hereinafter, the "ICA's opinion"], affirming the circuit court's findings of fact, conclusions of law, and order granting the defendant's motion to suppress the evidence seized pursuant to a search warrant. The prosecution argues that the ICA erred in affirming the order because: (1) the door was already open when the officer used force to open it further, and, therefore, there was no "breaking" and Hawai'i Revised Statutes (HRS) § 803–37 (1993) and *State v. Garcia*, 77 Hawai'i 461, 887 P.2d 671 (App.1995), did not apply; (2) the ICA's opinion is contrary to the purposes of the "knock and announce" rule; and (3) the ICA's opinion would require the police to perform the useless gesture of allowing a door to close after a failed ruse and then knocking, announcing, and demanding entry.

We hold that the use of a ruse is not prohibited in the execution of a search warrant. However, when the police use force to gain entry, they are required to comply with HRS § 803–37 and *Garcia*. Under the circumstances of this case, the requirements were met and the entry was not illegal. Therefore, we vacate the ICA's opinion and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

On July 15, 1997, vice narcotics officers of the Maui Police Department went to the Kamaole Sands Resort in Kīhei, Maui to execute a search warrant for unit number 9–408. The officers decided to employ a ruse to have the occupants open the door. Officer Clarence Kenui knocked on the door and said, "Open the door, Ripper." A female voice asked, "Who is it[?]" Officer Kenui again said, "Open the door, Ripper." Officer Kenui heard someone fumbling with the locks. A male then came to the door and asked who was there. Officer Kenui repeated, "Open the door, Ripper."

Llewellyn Foster then opened the door approximately one foot and looked around the door to see who was there. Foster recognized Officer Kenui and attempted to close the door. Officer Kenui then used some amount of force to further open the door as Foster tried to close it. According to Officer Kenui's testimony, he simultaneously announced, "Police, search warrant, we demand entry." He and the other officers entered the apartment and Officer Kenui repeated, "Police, search warrant, we demand entry." The officers found Foster, Jasmine Eleneki, and Eleneki's sister in the apartment. The three were secured in the living room while the officers searched the premises. In securing Foster and searching the unit, the officers found drugs and other various contraband.

On October 13, 1997, the grand jury indicted Eleneki on the following counts arising from the items seized: (1) promoting a dangerous drug in the third degree, in violation of HRS § 712–1243(1) (1993 & Supp.1996); (2) prohibited acts relating to drug paraphernalia, in violation of HRS § 329–43.5(a) (1993); and (3) promoting a detrimental drug in the third degree, in violation of HRS § 712–1249(1) (1993). On April 17, 1998, Eleneki filed a motion to suppress all evidence seized during the search. A hearing was held on June 18, 1998. Both Foster and Officer Kenui testified at the suppression hearing. On July 1, 1998, the circuit court issued its findings of fact and conclusions of law and order granting the motion to suppress. The circuit court ruled that *State v. Dixon*, 83 Hawai'i 13, 924 P.2d 181 (1996), did not apply because *Dixon* addressed the execution of an arrest warrant. Because the present case involved a search warrant, the circuit court concluded that:

> 9. Because Officer Kenui and the members of the Maui Police Department executing the search warrant in this case found the door shut, they were mandated by HRS Sec. 803–37 to comply with the knock and announce requirement;

> 10. The use of the ruse to open the door does not mean that the officer found it open and did not equate with a declara-

tion of the officer's office, the officer's business and a demand for entry;

11. Consequently, while the use of a ruse does not violate HRS Sec. 803–11 [(1993)], it clearly violates the plain language of HRS Sec. 803–37 as well as the case law set by *State v. Garcia*, 77 [Hawai'i] 461, 887 P.2d 671 ([App.] 1995)....

The prosecution filed a timely notice of appeal on July 21, 1998. In its opening brief, the prosecution argued that the circuit court erred in granting the motion because the constitutional parameters of the knock and announce rule are the same for the execution of an arrest warrant under HRS § 803–11 and a search warrant under HRS § 803–37, and, thus, the use of a ruse to gain entry is permissible in both instances.

The ICA, in a memorandum opinion filed on August 26, 1999, affirmed the order, but on different grounds. ICA's opinion at 1. The ICA disagreed with the circuit court and held that "if the use of a ruse causes a door to open and eliminates the need to use force to enter, HRS § 803–37's declaration and demand requirement is not applicable." ICA's opinion at 4. However, the ICA held that "this case is governed by the rule of *Dixon* that if force is involved to gain entry, the requirements of HRS § 803–37 and *Garcia* must be satisfied. In Eleneki's case, these requirements were not satisfied." ICA's opinion at 5. According to the ICA, because the officers did not comply with those requirements after the ruse failed, the search warrant was improperly executed.

On September 21, 1999, the prosecution filed the present timely application for a writ of certiorari.

## II. STANDARD OF REVIEW

▇▇▇ We review a circuit court's findings of fact in a pretrial ruling according to the following standard:

Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2)

despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citations and internal quotation marks omitted). "The circuit court's conclusions of law are reviewed under the right/wrong standard." *State v. Pattioay*, 78 Hawai'i 455, 459, 896 P.2d 911, 915 (1995) (citation omitted).

*State v. Wilson*, 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999).

## III. DISCUSSION

### A. Existing Hawai'i case law

In *State v. Garcia*, 77 Hawai'i 461, 887 P.2d 671 (App.1995), the ICA held that police officers executing a search warrant must expressly demand entrance, in addition to stating their authority and purpose, and that the officers must give the occupant a reasonable time to respond. Garcia was convicted of one count of promoting a dangerous drug in the second degree and two counts of prohibited acts related to drug paraphernalia. *Id.* at 463, 887 P.2d at 673. All of the items that were the subject of the charges were seized pursuant to a search warrant. Garcia argued that the search warrant was improperly executed.

When the police officers approached the door to Garcia's apartment, they knocked and stated, "Police, search warrant." After waiting approximately ten seconds for someone to respond, the officers made a forced entry. They pulled open a locked screen door and kicked open the wooden door behind it. *Id.* at 464, 887 P.2d at 674. The ICA vacated the judgment of conviction and reversed the trial court's order denying Garcia's motion to suppress because the officers had not demanded entry as required by HRS § 803–37 (1985) and had not given Garcia a reasonable time to respond before making a forced entry. We have previously cited *Garcia* with approval. *See, e.g., State v. Monay*, 85 Hawai'i 282, 943 P.2d 908 (1997).

In *State v. Dixon*, 83 Hawai'i 13, 924 P.2d 181 (1996), we held that HRS § 803–11 (1993) permitted the use of a ruse to gain

entry in the execution of an arrest warrant. Dixon had been indicted for promoting a dangerous drug in the first and second degrees and unlawful use of drug paraphernalia. *Dixon*, 83 Hawai'i at 15, 924 P.2d at 183. The items that formed the basis for the charges were seized when the police entered Dixon's hotel room to execute a warrant for his arrest for parole violations. The trial court granted Dixon's motion to suppress the evidence because the police had improperly executed the warrant.

Three Honolulu Police Department officers accompanied a hotel security guard to the door of Dixon's room. The guard knocked on the door and said that he was a hotel security guard who was there to check on the air conditioning. When the door was opened, the officers entered. *Id.* On appeal, we reversed the trial court's order granting the motion to suppress and held that the requirements of HRS § 803–11 did not apply because there had not been a "breaking." We further held that "entrance gained by the use of a ruse to execute a valid warrant is permissible as long as force is not involved." *Id.* at 14, 924 P.2d at 182.

### B. The use of a ruse in executing a search warrant is not prohibited.

■ The present case raises the issue whether our holding in *Dixon*—that a ruse is permissible to gain entrance in the execution of an arrest warrant—applies in the execution of a *search* warrant. We hold that the use of a ruse to gain entry is not prohibited in the execution of a search warrant. Although the language of HRS §§ 803–11 and 803–37 differs, the purposes of the "knock and announce" rule are identical in each context and the use of a ruse is also consistent

with those purposes in the execution of a search warrant.

### 1. Plain language of HRS §§ 803–11 and 803–37

HRS § 803–11 provides:

Whenever it is necessary to enter a house to arrest an offender, and entrance is refused, the officer or person making the arrest may force an entrance by breaking doors or other barriers. But before breaking any door, the officer or person shall first demand entrance in a loud voice, and state that the officer or person is the bearer of a warrant of arrest. . . .

In contrast, HRS § 803–37, which governs the execution of search warrants, states:

The officer charged with the warrant, if a house, store, or other building is designated as the place to be searched, may enter it without demanding permission if the officer finds it open. If the doors are shut the officer must declare the officer's office and the officer's business, and demand entrance. If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them. . . .

The earliest forms of HRS §§ 803–11 and 803–37 can be found in the 1869 Penal Code of the Kingdom of Hawai'i.[1] In substance, the current and original forms of the statutes are identical.[2] There is no legislative history to explain the differences between the language in the arrest warrant statute and the language in the search warrant statute. Neither is there an indication in the legislative history that the legislators considered the question whether the use of a ruse would violate either statute. Because the statutes are silent on the issue whether the use of a

---

1. The predecessor of HRS § 803–11 read:

   Whenever it is necessary to enter a house to arrest an offender, and entrance is refused, the officer or person making the arrest may force an entrance by breaking doors or other barriers. But before breaking any door, he shall first demand entrance in a loud voice, and state that he is the bearer of a warrant of arrest. . . .

   Penal Code of the Kingdom of Hawai'i ch. 49, § 10 (1869).

   The predecessor of HRS § 803–37 read:

   The officer charged with the warrant, if a house, store, or other building is designated as

the place to be searched, may enter it without demanding permission if he finds it open; if the doors be shut he must declare his office and his business, and demand entrance; if the doors, gates or other bars to the entrance be not immediately opened, he may break them.

   Penal Code of the Kingdom of Hawai'i ch. 48, § 8 (1869).

2. The only changes to both statutes were stylistic changes and the adoption of gender neutral language.

ruse is permissible, we look beyond the plain language of the statutes. Absent guidance from the legislative intent, we turn to the policies behind each statute.

### 2. Policies underlying the knock and announce rule in the execution of search warrants and arrest warrants

In *Dixon*, we identified the three purposes of the knock and announce rule: "(1) reduction of potential violence to both occupants and police resulting from an unannounced entry, (2) prevention of unnecessary property damage, and (3) protection of an occupant's right to privacy." 83 Hawai'i at 22, 924 P.2d at 190 (quoting *State v. Myers*, 102 Wash.2d 548, 689 P.2d 38, 42 (1984)). These policies are also applicable to the knock and announce rule in the execution of search warrants. The use of a ruse in the execution of a search warrant, as in the execution of an arrest warrant, is consistent with these policies.

In *Dixon*, we were persuaded by the analysis of the Washington Supreme Court in *Myers*, *supra*, in which the Washington Supreme Court held that the use of a ruse in the execution of a search warrant was constitutionally permissible.

> It appears obvious that a ruse entry, especially when the deception is not realized until after the entry has been accomplished, actually promotes both the purpose of preventing violent confrontation between the officer and the surprised occupant and that of preventing unnecessary property damage. Ruse entries such as that in the present case lack the element of surprise, thereby reducing the chance of confrontation.

With respect to the third purpose of the knock and announce rule, protecting the privacy of the occupant, the court explained that

> [t]he occupant's right of privacy is severely limited where the police have satisfied the Fourth Amendment's probable cause and warrant requirements. In such a case, the officers possess the authority to intrude upon the privacy of the home regardless of the occupant's wishes and irrespective of his activity at

the time of the intrusion.... Ruse entries are invariably characterized by some degree of advance notice; the occupant is expecting an entry. The entry is consensual, if the ruse works.

*Dixon*, 83 Hawai'i at 22–23, 924 P.2d at 190–91 (quoting *Myers*, 689 P.2d at 42–43) (alterations in original) (internal citations omitted). Because the use of a ruse is consistent with the policies of the knock and announce rule, we hold that the rule established in *Dixon* also applies to the execution of search warrants under HRS § 803–37.

### C. Because the officers used force to gain entry, they were required to comply with HRS § 803–37 and *Garcia*.

█ In *Dixon*, we held that "HRS § 803–11 is not implicated where entry is gained through an open door without use of force." 83 Hawai'i at 21, 924 P.2d at 189. In the present case, although the ruse prompted Foster to partially open the door, Officer Kenui had to use force to gain entry because Foster attempted to close the door after recognizing Kenui. Because force was used, the officers were required to comply with HRS § 803–37 and *Garcia*. The circuit court did not reach the issue whether the officers complied with HRS § 803–37 and *Garcia*; the ICA held that the requirements were not satisfied. We disagree with the ICA.

█ HRS § 803–37 provides that officers executing a search warrant "may enter [the place to be searched] without demanding permission if the officer finds it open. If the doors are shut the officer must declare the officer's office and the officer's business, and demand entrance." Under § 803–37 and *Garcia*, if the occupants do not open the door after the officers knock and announce, the officers may break the door after giving the occupants a reasonable time to respond. In the present case, the officers employed a permissible ruse, which induced Foster to open the door approximately one foot. This was sufficient to render the door "open" for purposes of the statute. Therefore, the officers were not required to knock and announce before entering, and the force used by the officers to further open the door

against Foster's resistance was not a breaking.

*United States v. Contreras–Ceballos,* 999 F.2d 432 (9th Cir.1993), is factually similar to the present case. In *Contreras–Ceballos,* the state troopers and postal inspectors executing a search warrant claimed to be from Federal Express. Kevin See, one of the apartment's occupants, opened the door approximately twelve inches and then attempted to close it because he saw the troopers. The lead trooper put his hand through the doorway, pushed the door open, and stepped inside while he announced, "Troopers, search warrant." The Ninth Circuit held that the search did not violate the federal knock and announce statute.

The federal knock and announce statute applicable in *Contreras–Ceballos* provided that "[t]he officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance...." 18 U.S.C. § 3109 (1985). The Ninth Circuit noted that it had previously established that the use of a ruse to gain entry did not implicate § 3109 because there was no breaking and that these cases controlled the outcome in *Contreras–Ceballos.* The court stated:

> Under *Dickey [v. United States,* 332 F.2d 773 (9th Cir.1964),] and *Leahy [v. United States,* 272 F.2d 487 (9th Cir.1959) ], the officers were not in violation of section 3109 when See opened the door in response to the officers' ruse. The officers then stated their identity, authority and purpose. At that point, the purposes of section 3109 had been fully served....

Their use of force to keep the door open, and to enter, did not implicate section 3109.

*Contreras–Ceballos,* 999 F.2d at 435. *See also United States v. Salter,* 815 F.2d 1150, 1152 (7th Cir.1987) ("Even if, as Salter says, the officers blocked the doorway and then pushed the door fully open ... there was no force used in this case that would implicate § 3109.").

In the present case, as in *Contreras–Ceballos,* Foster opened the door approximately twelve inches in response to the officers' ruse, then attempted to close the door. The officers met his resistance and pushed the door open further, announcing "Police, search warrant, we demand entry."[3] They repeated the announcement once inside. Their entry violated neither the terms of HRS § 803–37 nor the purposes of the knock and announce statute. Therefore, the search was valid and trial court erred in suppressing the evidence discovered during the search. In light of our holding that the officers did not violate HRS § 803–37, we need not address the prosecution's remaining arguments.

## IV. CONCLUSION

Based on the foregoing reasoning, we vacate the ICA's decision and remand the case for further proceedings consistent with this opinion.

---

3. The circuit court found that "[o]nce inside, the officers announced 'Police, search warrant, we demand entry[.]'" However, at the hearing on the motion to suppress, Officer Kenui testified that he announced, "Police, search warrant, we demand entry" twice. He testified that he made the first announcement simultaneously with his pushing the door open and that he made the second announcement once inside. The circuit court gave no indication that it found that any portion of Officer Kenui's testimony lacked credibility. Insofar as the circuit court's finding implies that the officers did not announce "Police, search warrant, we demand entry" until they were inside, the finding is clearly erroneous. The record clearly indicates that the officers made the first announcement simultaneously with their entry.