121 P.3d 901

STATE of Hawai'i, Petitioner/Plaintiff–
Appellee,

v.

Jobert Lyle MALDONADO,
Respondent/Defendant–
Appellant,

and

Kevin Wayne Anthony and Wendy Ualani
Tomiko Okimoto, Defendants.

No. 25606.

Supreme Court of Hawai'i.

Oct. 14, 2005.

Ryan Yeh, Deputy Prosecuting Attorney, on the writ, for petitioner/plaintiff-appellee State of Hawai'i.

Jack Schweigert, Honolulu, on the writ, for respondent/defendant-appellant Jobert Lyle Maldonado.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Following a jury trial in the Circuit Court of the First Circuit, the Honorable Victoria S. Marks presiding, respondent-defendant-appellant Jobert Lyle Maldonado was found guilty of: (1) one count of promoting a dangerous drug in the first degree in violation of Hawai'i Revised Statutes (HRS) § 712–1241(1)(d) (Supp.2001);[1] (2) one count of promoting a dangerous drug in the second degree, HRS § 712–1242(1)(b)(i) (1993 & Supp. 2001);[2] (3) two counts of promoting a dan-

---

1. HRS § 712–1241, entitled "Promoting a dangerous drug in the first degree," provides in relevant part:

 (1) A person commits the offense of promoting a dangerous drug in the first degree if the person knowingly:

 . . . .

 (d) Manufactures a dangerous drug in any amount[.]

 (2) Promoting a dangerous drug in the first degree is a class A felony.

 (3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the first degree under this section involved the possession, distribution, or manufacture of methamphetamine, or any of its salts, isomers, and salts of isomers, the person convicted shall be sentenced to an indeterminate term of imprisonment of twenty years with a mandatory minimum term of imprisonment, the length of which shall not be less than one year and not greater than ten years, at the discretion of the sentencing court for a conviction under subsection 1(a), (1)(b), or (1)(c) and not less than ten years for a

 conviction under subsection (1)(d). The person convicted shall not be eligible for parole during the mandatory term of imprisonment.

2. HRS § 712–1242, entitled "Promoting a dangerous drug in the second degree," provides in relevant part:

 (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:

 . . . .

 (b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:
 (i) one-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]

 . . . .

 (2) Promoting a dangerous drug in the second degree is a Class B felony.

 (3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the second degree under

gerous drug in the third degree, HRS § 712–1243 (1993 & Supp.2001);[3] and (4) one count of unlawful possession of drug paraphernalia, HRS § 329–43.5 (1993).[4] On June 6, 2005, the Intermediate Court of Appeals (ICA) issued a published opinion vacating the circuit court's January 24, 2003 judgment and remanding for further proceedings. *State v. Maldonado*, No. 25606 108 Hawai'i 446, 121 P.3d 911 (Haw.App. June 6, 2005) [hereinafter, ICA Opinion]. The State of Hawai'i [hereinafter, the prosecution] subsequently applied for a writ of certiorari to review the ICA Opinion.

We granted the prosecution's application for a writ of certiorari for two purposes: first, to address the following question raised by the prosecution—whether HRS § 803–11 (1993),[5] the so-called "knock-and-announce" rule, may be satisfied by substantial compliance. For the reasons stated by the ICA and adopted herein, we agree that, based on the facts of this case, where the police opened a closed screen door and broke the threshold of Maldonado's dwelling prior to announcing that they bore an arrest warrant and without waiting for a reasonable time after demanding entry, HRS § 803–11 was violated, with the consequence that the subsequent search of Maldonado's home and seizure of evidence therefrom were invalid. Second, although we agree with the ICA's application of HRS § 803–11, we also granted certiorari to notice error in the ICA's analysis of the sufficiency of the evidence supporting Maldonado's convictions in light of the illegal search and seizure. Because there was insufficient *admissible* evidence to support his conviction on any of the counts, we now vacate the ICA Opinion in part and remand the case to the circuit court for entry of a judgment of acquittal.

## I. BACKGROUND

Because it is not necessary to address any dispute regarding the substantive facts, this court adopts the following factual background set forth in the ICA Opinion:[6]

---

this section involved the possession or distribution of methamphetamine, or any of its salts, isomers, and salts of isomers, the person convicted shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment, the length of which shall be not less than six months and not greater than five years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory term of imprisonment.

3. HRS § 712–1243, entitled "Promoting a dangerous drug in the third degree," provides:

 (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

 (2) Promoting a dangerous drug in the third degree is a Class C felony.

 (3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory term of imprisonment.

4. HRS § 329–43.5, entitled "Prohibited acts related to drug paraphernalia," provides:

(a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

5. HRS 803–11, entitled "Entering house to arrest," provides:

Whenever it is necessary to enter a house to arrest an offender, and entrance is refused, the officer or person making the arrest may force an entrance by breaking doors or other barriers. But before breaking any door, the officer or person shall first demand entrance in a loud voice, and state that the officer or person is the bearer of a warrant of arrest; or if it is in a case in which arrest is lawful without warrant, the officer or person shall substantially state that information in an audible voice.

6. Although the ICA Opinion called into question the circuit court's factual findings regarding the precise sequence of events leading to the search of Maldonado's home, we, like the ICA, decline to express an opinion as to whether those findings are clearly erroneous because we agree with the ICA that, even on the facts as found, the

On June 25, 2002, the State charged Maldonado with five counts relating to contraband. Maldonado filed his Motion to Suppress Evidence (Motion to Suppress) on August 7, 2002, asking that "all evidence obtained as a result of an illegal seizure and search of the Defendant's residence" be suppressed. Hearings on the motion took place on August 22, September 5, and September 16, 2002.

At the hearings, Deputy Sheriff Cayetano (Cayetano) testified that on June 10, 2002 he was contacted by the Honolulu Police Department (HPD) regarding a tip HPD had received on the whereabouts of one of Hawaii's most wanted fugitives, Robert Maldonado (Robert), Maldonado's brother. The tipster provided information that Robert was at Maldonado's home and that firearms and drugs might be present. Police officers, including Officer Yosemori (Yosemori) and Officer Pagan (Pagan), went to Maldonado's residence to assist Cayetano in executing the arrest warrant for Robert. Based on Robert's status as "most-wanted," the officers were armed and had on bullet-proof vests. The officers approached the house, and Cayetano could see that the lights were on, the exterior screen door was closed, and the interior wooden door was open.

Cayetano had his gun unholstered and to his side. Cayetano testified that he simultaneously knocked on and opened the screen door and "announced, 'Sheriff's Office, Police.'" It was only after Cayetano knocked and opened the screen door that he asked if he could enter and stated that he had a "retake warrant." Cayetano testified when he opened the screen door, he looked into the house and it was possible that a portion of his upper body crossed the threshold of the house, but he did not enter the house. After Cayetano opened the door, he saw Maldonado, Wendy Okimoto (Okimoto), and Kevin Wayne Anthony (Anthony)[7] in a back room. The three individuals in the back room looked in the direction of the officers.

Cayetano testified that he said[,] "Sheriff's Office, police; is Robert here?" and Maldonado said[,] "No." Cayetano testified that he asked, "Do you mind us coming in? We're looking for Robert," and Maldonado said, "Yeah, yeah, yeah." The officers then entered the house. Cayetano asked Maldonado if he was the owner of the place, and Maldonado said yes. Cayetano testified that he instructed Maldonado, Okimoto, and Anthony to exit the house for safety reasons and wait outside with other police officers; Maldonado, Okimoto, and Anthony left the house.

Yosemori testified that he knocked on the screen door, saw the screen door was unlocked, and then opened the screen door while announcing[,] "Police and sheriffs." Yosemori testified that he opened the screen door because he could see people in the house through the screen door, but did not "have a good picture" of their movements, "like if anyone might have been pulling out a weapon or something." Yosemori stated that the screen door opened outward and he had his back against the door holding it open and had one foot on the platform in front of the door and one foot on the doorsill. Yosemori had his weapon out, but he was holding it down toward the ground. Yosemori testified that Cayetano told the people to come out of the room, and Yosemori asked if Robert was there. Maldonado said no. Yosemori asked who lived there, and Maldonado said he did. Yosemori asked Maldonado if he was Robert's brother, and Maldonado said yes. Yosemori testified that Cayetano asked if they could go inside and look for Robert, and Maldonado said "yeah."

Yosemori testified that he entered the house first and went into the closest room, but found no one in the room. He then went to the back room from which Maldonado, Okimoto, and Anthony had exited. Yosemori noticed that "right out in the

circuit court's conclusions of law regarding the motion to suppress were erroneous.

**7.** Co-defendants Wendy Okimoto and Kevin Wayne Anthony were charged with the same first four counts as Jobert Maldonado (Maldonado), but they were acquitted of all counts. [Footnote in ICA Opinion.]

open in the middle of the floor" there were three glass pipes with residue inside. Based on Yosemori's experience and training, he believed the pipes were used to smoke methamphetamine. Yosemori also found a glass dish with some crystal substance inside, a can of acetone, and a box of baking soda. Following procedure, Yosemori notified the narcotics division clandestine lab team.

Pagan testified that six or seven officers approached the house. The officers secured the perimeter of the house, and Pagan, Cayetano, and Yosemori went to the front door. As the officers approached the house, Pagan was holding a shotgun towards the house. While he was standing behind Cayetano and Yosemori at the front door, he held the shotgun pointed downward. Pagan testified that when Cayetano asked Maldonado if Robert was there, Maldonado answered no. Cayetano then asked Maldonado if they could "make entry into the residence to make sure that [Robert] wasn't there." Yosemori asked the same question. Pagan testified that he heard Maldonado answer yes to the officers' questions. After the officers entered the house, Pagan raised his shotgun, but he did not point it at Maldonado, Okimoto, and Anthony. Pagan testified that firearms were found by the police "on the side of the house."

Maldonado testified that on June 10, 2002, he was with Okimoto and Anthony in a room in his house when he heard "one loud noise that said oh, everybody, get out of the room." He stated that by the time he came out from the back room, the police were "right inside my doorway already; in fact, they were pretty much inside my house." The police had their guns out and one officer had a rifle pointing in the general direction of Maldonado, Okimoto, and Anthony. Maldonado claimed he felt threatened and scared because of the presence of the police and their firearms, even though no one made any verbal threats. Maldonado testified that when the police asked whether they could look for Robert, Maldonado said[,] "I guess[,]" or "yeah," agreeing with the request.

The circuit court denied Maldonado's Motion to Suppress and issued its "Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Evidence" on November 12, 2002. The circuit court's Findings of Fact and Conclusions of Law were as follows:

## FINDINGS OF FACT

1. On June 10, 2002, the Department of Public Safety and the Honolulu Police Department acted on a tip that a parole violator, Robert Maldonado (defendant JOBERT MALDONADO's brother) was currently at an apartment at 1704A Apaki Street.

2. A Sheriff's deputy and Honolulu Police Department officers were in possession of an arrest warrant authorizing them to arrest Robert Maldonado; and when the officers went to that address they confronted defendant JOBERT MALDONADO.

3. According to the information given to the officers, firearms were purported to be present at the premises where Robert Maldonado had been reported, which was defendant JOBERT MALDONADO's residence.

4. When they approached the premises where Robert Maldonado was reported to be, one or more officers knocked on the door, announced their presence and office (both the police and the sheriff) and demanded entry; then one or more officers partially entered the front door of defendant MALDONADO's residence, by opening a screen door outward and crossing the threshold with part of one officer's body.

5. The wooden interior door had been open before the officers arrived at the premises, and the officers could see through the screen door to the interior of the residence before opening the screen door.

6. The officers asked defendant JOBERT MALDONADO if Robert Maldonado was present, but when defendant MALDONADO told them Robert was not there, the officers asked to check the premises anyway.

7. Defendant MALDONADO gave the officers permission to check the premises at which time the officers entered, and once inside they saw what appeared to be a "clandestine lab" used for the production of methamphetamine.

8. Also observed within the residence were the two other co-defendants, KEVIN WAYNE ANTHONY and WENDY UALANI TOMIKO OKIMOTO, who had both exited the room where the purported clandestine lab was found.

## CONCLUSIONS OF LAW

1. The officers who approached defendant MALDONADO were in compliance with § 804–11[sic] HRS requirements to knock and announce their office, and demand entry before forcibly entering the premises to execute a warrant of arrest. *See* [,] *e.g.*[,] *State v. Harada,* 98 Hawai'i 18[, 41 P.3d 174] (2002).

2. In addition to satisfying the "Knock and Announce" rule, the officers in this case also obtained permission from defendant JOBERT MALDONADO to enter the premises to search for Robert Maldonado.

3. Even if the officers had not met the requirements of the "Knock and Announce" rule, the officer's [sic] knowledge of the possible presence of firearms on the premises constituted an exigent circumstance justifying entry into the residence.

4. Concerning discovery of equipment suspected of being a so-called "clandestine lab" and other contraband observed by the officers, once the officers were properly in the residence, observation of these materials was proper and allowable as the evidence was in "open view." *State v. Stachler,* 58 Haw. 412[, 570 P.2d 1323] (1977).

Following the circuit court's oral denial of Maldonado's motion to suppress on September 16, 2002, the case proceeded to trial, and on November 8, 2002, Maldonado was found guilty by the jury on all five counts alleged in the complaint. On January 24, 2003, the circuit court entered a final written judgment sentencing Maldonado to an indeterminate term of varying length for each count, the sentences to be served concurrently but with a mandatory minimum of two and a half years.

Maldonado appealed on January 29, 2003 and the case was assigned to the ICA. Maldonado argued, *inter alia,* that the circuit court erred in denying his motion to suppress and in denying his motions for a judgment of acquittal. The ICA agreed in part, and on June 6, 2005, issued a published opinion vacating the judgment of conviction and sentence and remanding for further proceedings.

In its opinion, the ICA found that the entry of Maldonado's home was in violation of HRS § 803–11 and, thus, that the circuit court had erred in denying Maldonado's motion to suppress the evidence collected as a result of the subsequent illegal search and seizure. The ICA found, however, that there was substantial evidence in the record to support Maldonado's convictions and that the circuit court's denial of his motions for acquittal was therefore not error. Specifically, the ICA relied on the following evidence as being sufficient to support Maldonado's conviction on each count: (1) contraband found in the back corner room; (2) the fact that Maldonado lived at the residence and had control of the house; (3) the fact that Maldonado was witnessed exiting the room where drugs and contraband were found; (4) a pipe with the initials "JM" found in the back room; and (5) methamphetamine found in Maldonado's pants pocket.

The prosecution filed an application for a writ of certiorari challenging the ICA's conclusion with respect to the legality of the police entry into Maldonado's home. In its application, the prosecution argued that the entry, as well as the subsequent search and seizure, was valid for any or all of the following reasons: (1) the police substantially complied with the "knock-and-announce" rule; (2) the possible presence of firearms at Maldonado's home constituted exigent circumstances such as to excuse the police from compliance with the "knock-and-announce" rule; (3) Maldonado consented to the search; and (4) the drug paraphernalia and other items of evidence were found in plain view. The ICA rejected these arguments as follows: (1) the police violated the "knock-and-announce" rule, HRS § 803–11, by (a) failing

to announce that they bore an arrest warrant before "breaking" [8] Maldonado's door, and (b) failing to wait a reasonable time after demanding entry and before breaking Maldonado's door; (2) the possible presence of firearms, without more, did not constitute exigent circumstances excusing non-compliance with HRS § 803–11; (3) Maldonado's consent to the police search of his home was based on duress and was also the fruit of the illegal entry; and (4) the evidence would not have been in plain view but for the illegal entry by the police.

We granted the prosecution's application for certiorari, and we now affirm the ICA Opinion in part and vacate in part. On the record presented, we concur with the ICA's conclusion with respect to the illegality of the search and seizure conducted in Maldonado's home and thus agree that the circuit court erred in denying Maldonado's motion to suppress. However, in analyzing the sufficiency of the evidence, the ICA improperly relied on the very evidence obtained as a result of the illegal search and seizure. As this amounts to error requiring reversal of Maldonado's conviction and entry of a judgment of acquittal, we will now address both issues.

## II. STANDARDS OF REVIEW

### A. Motion to Suppress

 [T]he proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own Fourth Amendment rights were violated by the search and seizure sought to be challenged. The proponent of the motion to suppress must satisfy this burden of proof by a preponderance of the evidence.

State v. Anderson, 84 Hawai'i 462, 467, 935 P.2d 1007, 1012 (1997) (citations, emphases, and internal quotation signals omitted). The appellate court reviews a "circuit court's ruling on a motion to suppress de novo to determine whether the ruling was 'right' or 'wrong'." State v. Kauhi, 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997).

### B. Sufficiency of the Evidence/Judgment of Acquittal

 [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Richie, 88 Hawai'i at 33, 960 P.2d at 1241 (internal quotation marks and citation omitted).

The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

State v. Keawe, 107 Hawai'i 1, 4, 108 P.3d 304, 307 (2005) (brackets omitted) (quoting State v. Pone, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995)).

## III. DISCUSSION

### A. The Circuit Court Erred When It Denied Maldonado's Motion to Suppress Because, as the ICA Correctly Concluded, the Police Violated HRS § 803–11, and Thus the Search of Maldonado's Home and Seizure of Evidence Therefrom Were Illegal.

 The ICA concluded that "[b]ecause the [HPD and Sheriff's Department] officers

---

**8.** As the ICA noted, "breaking" as used in HRS § 803–11 is a term of art and does not imply or require the use of any physical force beyond that involved in opening a closed but unlocked door.

Harada, 98 Hawai'i at 22, 41 P.3d at 178; State v. Dixon, 83 Hawai'i 13, 18, 924 P.2d 181, 186 (1996).

failed to follow the mandate of HRS § 803–11 and illegally entered Maldonado's home, the items seized as [a] result of the illegal entry should have been suppressed." We hereby affirm this conclusion and adopt the reasoning set forth in Section III.A of the ICA Opinion. Rather than repeat the ICA's analysis in full, we will review two key points in the ICA Opinion, as well as make a third point of our own.

### 1. The Police Violated HRS § 803–11 By Failing to Announce That They Were Bearers of an Arrest Warrant Before Breaking the Door of Maldonado's Dwelling.

As the ICA noted, this court has previously stated that the requirement in HRS § 803–11 that law enforcement announce that it is the bearer of an arrest warrant *prior* to "breaking any door" is not to be taken lightly. *Dixon*, 83 Hawai'i at 17, 924 P.2d at 185. Here, the circuit court found that the police: (1) knocked on the screen door; (2) announced their presence and demanded entry; (3) opened the screen door; and then (4) partially entered the house. Although the circuit court did not make any express written findings with respect to whether the police announced their purpose (*i.e.*, that they had come to execute a retake warrant for Robert Maldonado) before opening the screen door, the record demonstrates, as the ICA noted, that they did not do so until after the four events above had already transpired. By failing to state that they bore

a warrant prior to opening the screen door, the police violated HRS § 803–11.

### 2. The Police Also Violated HRS § 803–11 By Failing to Wait a Reasonable Time After Demanding Entry Before Breaking the Door of Maldonado's Dwelling.

As the ICA also noted, law enforcement must wait a reasonable time after demanding entry before breaking the door. *See State v. Garcia,* 77 Hawai'i 461, 469, 887 P.2d 671, 679 (App.1995) (ten-second delay insufficient under HRS § 803–37[9]). Here again, the circuit court did not enter any written finding, but the evidence in the record as to the length of time between the demand for entry and the opening of the screen door demonstrates, as the ICA noted, that the two events were essentially simultaneous. We therefore concur with the ICA and hold that the police violated HRS § 803–11 by failing, prior to breaking the screen door of Maldonado's house, to (1) state that they were bearers of an arrest warrant, and (2) wait a reasonable time after demanding entry. Accordingly, the ICA was correct in concluding that the circuit court erred in denying Maldonado's motion to suppress.[10]

### 3. The Doctrine of Substantial Compliance Contravenes the Plain Language of HRS § 803–11.

■ In addition to noting our agreement with the ICA, we now address a doctrinal

**9.** HRS § 803–37 (1993), the companion statute to HRS § 803–11, sets forth the knock-and-announce rule with respect to the execution of search warrants (as opposed to arrest warrants), and provides in pertinent part: "If the doors are shut the officer must declare the officer's office and the officer's business, and demand entrance. If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them." This court has previously treated both statutes similarly, and we consider them jointly for present purposes as well. *See Harada,* 98 Hawai'i at 29, 41 P.3d at 185 (preferring a reading that avoids incongruity between the two statutes); *State v. Eleneki,* 92 Hawai'i 562, 565, 993 P.2d 1191, 1194 (2000) ("Although the language of HRS §§ 803–11 and 803–37 differs, the purposes of the 'knock and announce' rule are identical in each context[.]").

**10.** We also agree with the ICA that neither Maldonado's consent nor the "plain view" doctrine

excuses the failure of the police to comply with HRS § 803–11 because both were premised on, and the fruit of, the prior illegal entry. *See State v. Pau'u,* 72 Haw. 505, 509–10, 824 P.2d 833, 835–36 (1992) (defendant's waiver of constitutional rights is invalid where induced by illegal search); *State v. Phillips,* 67 Haw. 535, 541, 696 P.2d 346, 351 (1985) ("A search is not to be made legal by what it turns up." (Citation, quotation marks, and brackets omitted.)). Finally, we agree that the possible presence of firearms does not constitute an exigent circumstance suspending, excusing, or otherwise obviating law enforcement's duty to comply with HRS § 803–11, where, as here, it does not require an immediate response "to prevent imminent danger to life or serious damage to property, or to forestall the likely escape of a suspect or the threatened removal or destruction of evidence." *State v. Lloyd,* 61 Haw. 505, 512, 606 P.2d 913, 918 (1980).

point. Both the prosecution and the ICA dissent contend that the validity of the search and seizure should be analyzed under a "doctrine of substantial compliance" (*i.e.*, a lack of strict compliance with the terms of HRS § 803–11 should not warrant suppression of subsequently obtained evidence if the purposes of the statute are not offended). This contention is without merit.

First, our prior case law contains no reference to substantial compliance; rather, it establishes that the knock-and-announce rule must be strictly followed. For example, in *Harada*, we held that "the requirements of the knock and announce rule are not met when police officers fail to orally demand entry, and a *demand of entry cannot be implied from simply stating, 'Police, search warrant.'*" 98 Hawaiʻi at 29, 41 P.3d at 185. (Emphasis added.) Significantly, we held that law enforcement must *explicitly* make a demand for entry even though it would be reasonable to infer that if law enforcement officials standing at the entry to a residence state, "Police, search warrant," then it follows that they wish to enter the residence to execute the warrant. Thus, given that we have previously found a violation of the knock-and-announce rule where law enforcement could be deemed to have substantially complied, the ICA majority in this case correctly rejected the argument that "substantial compliance" with HRS § 803–11 is legally sufficient in the absence of exigent circumstances. To remove any remaining doubt, we now expressly reject the doctrine of substantial compliance because it violates the plain language of the statute.

To employ the substantial compliance analysis in a statutory reconstruction of what is plain and unambiguous in HRS § 803–11 would infringe on the legislature's prerogatives in our governmental system of separation of powers. It is true that both the fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution require only that a search or seizure must be reasonable.[11] *See Dixon*, 83 Hawaiʻi at 22–24, 924 P.2d at 190–92 (noting that the common-law "knock-and-announce" principle is part of the constitutional reasonableness inquiry and quoting with approval *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), for the proposition that not "every entry must be preceded by announcement" because the "Fourth Amendment's flexible requirement of reasonableness" allows consideration of "countervailing law enforcement interests"). *See also Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (whether failure to comply with a common-law knock-and-announce rule when executing a warrant will be excused depends on whether compliance was reasonable under the circumstances of a given case). However, where the legislature has enacted a valid statute that provides greater protection than the constitution, conformance to the statutory mandate, and not the lower reasonableness standard set forth by the state or federal constitution, is required. *Harada*, 98 Hawaiʻi at 49–50, 41 P.3d at 206 (Acoba, J. concurring in part and dissenting in part). Because the statute thus affords greater protection than the constitution, the constitutional reasonableness inquiry is not implicated.[12] Accordingly, we find no room in the knock-and-announce statute for the doctrine of substantial compliance; to limit the protection afforded by HRS § 803–11 with such an overlay would violate the express language of the statute

---

**11.** The constitutional analysis is relevant because, although the ICA dissent is packaged in terms of "substantial compliance," its contents are simply the view that law enforcement in this case acted reasonably under the circumstances.

**12.** We caution, however, that in requiring strict compliance with HRS § 803–11 we do not mean to repudiate our prior case law using the constitutional reasonableness standard as a *gap-filler* (*i.e.*, using reasonableness to determine whether law enforcement has in fact strictly complied

with the statute where the plain language of the statute is silent). For example, neither HRS § 803–11 nor HRS § 803–37 states exactly how long law enforcement must wait after announcing its presence before breaking a door. Accordingly, the court must determine whether, under the circumstances of the given case, law enforcement waited a reasonable amount of time. *Garcia*, 77 Hawaiʻi at 468, 887 P.2d at 678; *Harada*, 98 Hawaiʻi at 50–51, 41 P.3d at 206–07 (Acoba, J. concurring in part and dissenting in part).

and be incompatible with this jurisdiction's viable and controlling precedents.

B. *The Circuit Court Erred in Denying Maldonado's Motions for Judgment of Acquittal Because There Was Insufficient Admissible Evidence to Support Any of the Convictions.*

██ Although the ICA correctly ruled that the evidence seized from Maldonado's home as a result of the illegal entry should have been suppressed, it then erroneously relied on that same evidence to conclude that "substantial evidence existed to support all of the convictions, and the circuit court did not err in denying Maldonado's motions for judgment of acquittal." This court has previously held that "[a]ssuming an unreasonable search or seizure, any evidence derived therefrom is inadmissible in a criminal prosecution, and a conviction obtained thereby must be reversed." *State v. Wallace*, 80 Hawai'i 382, 393, 910 P.2d 695, 706 (1996) (internal citations, quotation marks, and ellipsis omitted). However, this court in *Wallace* went further and held not only that such a conviction must be reversed, but that, "for purposes of determining whether the double jeopardy clause of article I, section 10 [of the Hawai'i Constitution] precludes retrial of a defendant whose conviction has been set aside because of insufficient evidence, ... sufficiency of the evidence is reviewed *based only on the evidence that was properly admitted at trial.*" [13] *Wallace*, 80 Hawai'i at 414 n. 30, 910 P.2d at 727 n. 30 (emphasis in original). *See also Whiting v. State*, 88 Hawai'i 356, 359 n. 2, 966 P.2d 1082, 1085 n. 2 (1998) (citing *Wallace* for

the proposition that material elements of the charged offense or offenses must be supported by substantial and *admissible* evidence).

██ Here, as the ICA correctly concluded, all evidence obtained as a result of the illegal search and seizure of Maldonado's home should have been suppressed and thus was not properly admitted at trial. As set forth above, however, the ICA nevertheless relied on the following evidence as being sufficient to support Maldonado's conviction on each count: (1) contraband found in the back corner room; (2) the fact that Maldonado lived at the residence and had control of the house; (3) the fact that Maldonado was witnessed exiting the room where drugs and contraband were found; (4) a pipe with the initials "JM" found in the back room; and (5) methamphetamine found in Maldonado's pants pocket. Because all of that evidence was discovered subsequent to and as a result of the illegal entry and thus was inadmissible, it should not have been relied upon in measuring the sufficiency of the evidence supporting the convictions. Moreover, because it does not appear upon review of the record that there was any other, admissible evidence against Maldonado, the evidence was legally insufficient to support his conviction on any of the counts. Therefore, jeopardy attached, and he may not be retried.[14] Consequently, the circuit court erred in denying Maldonado's motion for a judgment of acquittal.

---

**13.** It bears emphasis that this court in so holding relied solely on the greater protections afforded under article I, section 10 of the Hawai'i Constitution, as opposed to the protections provided under the fifth amendment to the United States Constitution. *Wallace*, 80 Hawai'i at 413 n. 29, 414 n. 30, 910 P.2d at 726 n. 29, 727 n. 30. In *Wallace*, we expressly declined to follow *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), which held that the fifth amendment does not bar the appellate court from considering inadmissible evidence in deciding whether retrial is permitted. *Id.* at 16–17, 98 S.Ct. 2141. *See also Lockhart v. Nelson*, 488 U.S. 33, 40–41, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) ("It is quite clear from our opinion in *Burks* that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double

Jeopardy Clause."). Accordingly, we reject the ICA's application of *Wallace* in *State v. Bebb*, 99 Hawai'i 213, 218–19, 53 P.3d 1198, 1203–04 (App.2001) (holding that *Wallace* allows the appellate court to consider inadmissible evidence in measuring sufficiency).

**14.** As in *Wallace*, we again emphasize that in those cases where there remains substantial, admissible evidence to support a conviction, jeopardy does not attach and the appropriate appellate remedy is not to direct entry of a judgment of acquittal, but instead to vacate the conviction and remand for a new trial. *See Wallace*, 80 Hawai'i at 414 n. 30, 910 P.2d at 727 n. 30 (distinguishing between reversal for trial error and reversal for evidentiary insufficiency).

## IV. CONCLUSION

Based on the foregoing, we affirm the ICA Opinion with respect to Sections I, II, and III.A, but vacate with respect to Sections III.B and IV. Accordingly, we remand this case to the circuit court for entry of a judgment of acquittal.

