**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000898
13-APR-2020
09:36 AM**

NO. CAAP-17-0000898

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
SAMSON K. KEANAAINA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(3CPC-17-0000154)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Wadsworth, JJ.)

## I.  INTRODUCTION

Defendant-Appellant Samson K. Keanaaina (Keanaaina) appeals from the November 17, 2017 Judgment of Conviction and Sentence entered by the Circuit Court of the Third Circuit (Circuit Court).[1]  After a jury trial, the Circuit Court convicted Keanaaina of Prohibited Acts Related to Drug Paraphernalia, Hawaii Revised Statutes (HRS) § 329-43.5(a) (Supp. 2019); Promoting a Dangerous Drug in the Third Degree, HRS § 712-1243(1) (2014); Promoting a Detrimental Drug in the Third Degree, HRS § 712-1249(1) (2014); and Attempted Promoting a Controlled Substance in, on or near Schools, School Vehicles, Public Parks, or Public Housing Projects or Complexes, HRS §§ 705-500(1)(b) (2014) and 712-1249.6(1) (2014).

On appeal, Keanaaina contends that (a) his Motion to Suppress was wrongfully denied because (1) the police officers

---

[1]    The Honorable Melvin H. Fujino presided.

failed to knock and announce and (2) the warrant did not permit search of Keanaaina's backpack; (b) Juror #7 should have been excused immediately upon the Circuit Court's learning that she was a neighbor to a police officer witness (Police Officer Witness); (c) Keanaaina's trial counsel was ineffective for failing to object to the prosecutor's line of questioning of Keanaaina; and (d) there would have been insufficient evidence to convict Keanaaina if the Motion to Suppress had been granted.

## II. BACKGROUND

On March 8, 2017, police executed a search warrant for a homeless woman and the campsite she lived in at the Old Kona Airport Park. The several police officers yelled at least five times from as close as fifteen feet away from the tent announcing their office, that they had a warrant, and asking all individuals present to exit their tents. The police did not knock on the woman's tent; there was nothing to knock on but a tarp. However, Officer Michael Hardie, who was "up against the tent" yelled into the tent "five to six times", announcing police presence and asking the occupant to come outside. In response, many individuals exited their tents, including the woman who was the target of the warrant. The woman told an officer that her sleeping boyfriend, Keanaaina, was hearing impaired and likely could not hear the officers' command to exit; therefore, one officer moved a futon out of the way, entered the tent, and tapped on the man's shoulder to wake him up. Drugs and drug paraphernalia were discovered inside two backpacks and two Hydroflasks located on the bed on which the woman and the man had been sleeping.

## III. POINTS ON APPEAL

Keanaaina alleges the following points of error on appeal:[2]

---

[2] The Opening Brief fails to comply with Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(ii) and (iii) in that Keanaaina fails to show where in the record the alleged error occurred and where in the record the

(continued...)

> A. The Circuit Court erred in denying Keanaaina's Motion to Suppress upon the circumstances surrounding the execution of the search warrant.
>
> B. The Circuit Court abused its discretion by failing to immediately excuse Juror #7, who had a personal connection to a police officer witness.
>
> C. The defense counsel was ineffective for failing to object to questions on cross-examination that were outside the scope of direct and were evidence of prior bad acts.
>
> D. The wrongful introduction of evidence obtained through the search warrant was not harmless error.

## IV. STANDARDS OF REVIEW

### A. Motion to Suppress

We review a circuit court's findings of fact in a pretrial ruling according to the following standard:

> Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.

> State v. Okumura, 78 Hawaiʻi 383, 392, 894 P.2d 80, 89 (1995) (citations and internal quotation marks omitted). "The circuit court's conclusions of law are reviewed under the right/wrong standard." State v. Pattioay, 78 Hawaiʻi 455, 459, 896 P.2d 911, 915 (1995) (citation omitted). Furthermore,

> > the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his or her own Fourth Amendment rights were violated by the search and seizure sought to be challenged.

> State v. Abordo, 61 Haw. 117, 120-21, 596 P.2d 773, 775 (1979) (citation and footnote omitted). . . . The proponent of the motion to suppress must satisfy this "burden of proof by a preponderance of the evidence." Pattioay, 78 Hawaiʻi at 466, 896 P.2d at 922 . . . (citation omitted).

---

[2](...continued)
alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. Counsel is warned that future violations of the rules of court may result in sanctions.

State v. Anderson, 84 Hawai'i 462, 466-67, 935 P.2d 1007, 1011-12 (1997) (brackets and emphases omitted).

## B.   Jury Challenges for Cause

Hawai'i appellate courts review a trial court's decision to pass a juror for cause under the abuse of discretion standard.  State v. Kauhi, 86 Hawai'i 195, 197, 948 P.2d 1036, 1038 (1997).  "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (citation and internal quotation marks omitted).

## C.   Ineffective Assistance of Counsel

> When reviewing a claim of ineffective assistance of counsel, [the appellate court] looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases.  The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test:  1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.  To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense.  A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawai'i 504, 513-14, 78 P.3d 317, 326-27 (2003) (citations, internal quotation marks, and footnote omitted).

### V. DISCUSSION

## A.   The Circuit Court Properly Denied the Motion to Suppress.

Keanaaina contends that the denial of the Motion to Suppress was wrong because the evidence had been illegally obtained when (1) the police failed to "yell out 'KNOCK KNOCK', and demand entry" prior to breaking into the tent; and (2) the police searched a backpack they should have realized belonged to Keanaaina, who was a visitor.[3]

---

[3]     Keanaaina also purports to challenge the specificity of the warrant, but does not identify in what way the warrant's specificity was lacking.  Therefore, we do not analyze this argument further.

1. **The Search Was Legal Because, Although Knock and Announce Did Not Apply, the Police Nevertheless Complied with Its Requirements.**

When executing a search warrant, a police officer may enter the

> house, store, or other building . . . designated as the place to be searched . . . without demanding permission if the officer finds it open. If the doors are shut, the officer shall declare the officer's office and the officer's business and demand entrance. If the doors, gates, or other bars to the entrance are not immediately opened, the officer may break them[.]

HRS § 803-37 (2014). The Hawaiʻi Supreme Court has repeatedly stated that, when interpreting a statute, an appellate court's

> foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, [a court's] only duty is to give effect to [the statute's] plain and obvious meaning.

State v. Wells, 78 Hawaiʻi 373, 376, 894 P.2d 70, 73 (1995) (citations, original quotation marks, and brackets omitted; brackets added). Assuming HRS § 803-37 was applicable to the tent involved in this case,[4] the tent did not have a clearly defined door. Therefore, whether a door was "open" or "closed" – the latter state triggering the requirements of the statute – was also not clear.

Assuming the existence and closed status of the "door", HRS § 803-37 requires police officers to "declare the officer's office and the officer's business; and demand entrance" prior to executing a search warrant. State v. Dixon, 83 Hawaiʻi 13, 17 n.4, 924 P.2d 181, 185 n.4 (1996). The purposes of this so-called knock and announce rule are to "(1) reduce the potential of violence to both occupants and police resulting from an unannounced entry; (2) prevent unnecessary property damage; and

---

[4] The terms "house" and "building" are not defined in the statute. A shelter made from poles and overlapping tarpaulins and other materials, referred to in this case as a tent, is arguably not a "house, store, or other building" within common understanding. See House and Building, Merriam-Webster's Collegiate Dictionary (11th ed. 2003).

5

(3) protect the occupant's right of privacy[.]" Id. at 14, 924 P.2d at 182.  The knock and announce rule is a mechanism that "safeguard[s] individuals from the arbitrary, oppressive, or harassing conduct of government officials" as guaranteed by article I, section 7 of the Hawai'i Constitution.  State v. Diaz, 100 Hawai'i 210, 217-18, 58 P.3d 1257, 1264-65 (2002).  Where the purposes of the knock and announce rules are not frustrated, evidence obtained need not be suppressed.  Dixon, 83 Hawai'i at 14, 924 P.2d at 182.  In this case, all three of the knock and announce rule purposes were fulfilled.

First, the ten-plus officers clearly and loudly announced that they were police officers, that they had a search warrant, and demanded that the individuals exit their tents, thereby announcing their presence and reducing the potential of violence to both occupants and police.  HRS § 803-37; Dixon, 83 Hawai'i at 14, 924 P.2d at 182.  By the plain language of the statute, the officers were not required to actually knock on the tent structure,[5] but rather to ensure that the occupants heard their announcement.  Requiring police to knock on the tent structure or, as suggested by Keanaaina, to yell "knock, knock" would not be any more effective than the other orders the police used here, thereby not increasing the chance that the occupants heard the police's announcements.  Furthermore, as the Circuit Court concluded, upon the woman's exit from the tent, she voluntarily opened her "door," whereby knock and announce was no longer required.  Dixon, 83 Hawai'i at 23, 924 P.2d at 191 ("there is no unwarranted intrusion on the occupant's privacy [where] the occupant has voluntarily surrendered his or her privacy by opening the door.").

Moreover, there was testimony that police yelled both demands for entry and for the occupants to leave their

---

[5]    The Circuit Court's finding that the structure was soft sided and knocking would have made no noise is unchallenged on appeal and therefore binding on this court.

6

enclosures.  Thus, the police complied with the requirements of HRS § 803-37, as well as its first purpose.

Second, the officers were able to see the interior of the tent through gaps and could therefore pick the entranceway that would cause as little property damage as possible while providing the greatest safety to themselves and the remaining occupant, Keanaaina.  As the Circuit Court concluded, there was no "breaking" of a door.  Instead, after the woman-resident voluntarily exited the tent, the officers entered the tent by lifting a flap and moved a couch, which was unlikely to cause permanent property damage.

Furthermore, the police are entitled to "break" any barrier denying the officers access to the structure if the "bars to the entrance are not immediately opened."  HRS § 803-37. State v. Eleneki, 92 Hawaiʻi 562, 566, 993 P.2d 1191, 1195 (2000).  "What would constitute a reasonable period of time to respond to a knock and announcement must be determined by the circumstances of each case."  State v. Monay, 85 Hawaiʻi 282, 284, 943 P.2d 908, 910 (1997) (internal quotation marks and brackets omitted) (quoting State v. Garcia, 77 Hawaiʻi 461, 468, 887 P.2d 671, 678 (App. 1995)).  Here, several minutes passed between the officers first requesting that the occupants exit and the officers entering the tent, and the officers only entered after learning that verbal commands were unlikely to be heard by the remaining occupant of the tent.  This delay was reasonable and entitled the police officers to lift the flap and move the couch.  See Diaz, 100 Hawaiʻi at 219, 58 P.3d at 1266 (holding that a fifteen seconds lapse before forcibly entering the interior office of a business during business hours was reasonable).

Third, the officers protected Keanaaina's privacy as much as possible under the circumstances by providing Keanaaina several minutes to respond.  Upon learning from his girlfriend that Keanaaina was likely unable to hear the officers because he is hearing impaired, and yelling yielded no response from

7

Keanaaina, the police officers reasonably entered the structure to physically tap on his shoulder to wake him up.

Based on this record, the police officers complied with the requirements and purposes of HRS § 803-37 and the Circuit Court did not err when it denied Keanaaina's Motion to Suppress.

2. **The Police Properly Seized and Searched the Gray Backpack Pursuant to the Search Warrant.**

Keanaaina asserts that, because there were two backpacks on the bed on which one man and one woman slept, "[i]t defies logic to conclude other than that the 'Hello Kitty' model belonged to [the woman] and the SWISSGEAR model belonged to" Keanaaina, and the police therefore illegally searched the gray SWISSGEAR backpack. Keanaaina's argument is without merit.

"[A] lawfully issued warrant to search premises extends to the officers executing it the 'authority to search, in a reasonable manner, whatever spots within the described premises their professional experience indicates may be used as a cache' for the items named in the warrant." State v. Nabarro, 55 Haw. 583, 583, 525 P.2d 573, 574 (1974) (quoting State v. Davenport, 55 Haw. 90, 100, 516 P.2d 65, 72 (1973)).

> [T]he police cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a non-resident, and hence is not searchable. Because of this, without notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to search under a warrant are part of those premises for the purpose of executing the warrant.

Nabarro, 55 Haw. at 587-88, 525 P.2d at 576-77 (emphases added). Because the warrant authorized a search of every backpack found within the woman's (Keanaaina's girlfriend) campsite, absent clearly identifying markings on the gray backpack, the warrant

authorized the search of Keanaaina's backpack.[6]  Nabarro, 55 Haw. at 593-94, 525 P.2d at 580.  There is no evidence in the record that the police knew that the gray backpack belonged to Keanaaina prior to searching it.  No photographs in evidence depicted, and no witness identified, any exterior markings, writings, or other symbols that identified the gray bag as belonging to a male, let alone Keanaaina.[7]  Thus, Keanaaina failed to show the police should have known the gray backpack belonged to him prior to its seizure.

When the officers -- pursuant to the valid search warrant of the tent structure -- opened the gray backpack, they immediately observed controlled substances.  The officers did not search the backpack further at that time, but, rather, brought the bag to the police station to complete the search in a controlled environment.  Only upon the subsequent search did the police uncover Keanaaina's identification cards inside the backpack, for the first time showing who the likely owner of the backpack was.  Under the plain view doctrine, the items the officers observed after warrant-authorized opening of the backpack are admissible, and the subsequent discovery of the backpack's true owner does not negate the admissibility of the evidence.  See State v. Meyer, 78 Hawai'i 308, 312-13, 893 P.2d 159, 163-64 (1995).  Thus, the Circuit Court's Conclusion of Law number 15, that "[t]he backpack which contained the identification cards of the defendant was not clearly the

---

[6]    Citing State v. Joyner, 66 Haw. 543, 545-46, 669 P.2d 152, 153-54 (1983), Keanaaina contends that he retained a reasonable expectation of privacy in the backpack because of its proximity to him.  However, unlike the case at hand, in which the search warrant authorized search of all repositories that could contain methamphetamine, the search warrant in Joyner authorized a search for gambling devices in a bath house.  Id.  Thus, the defendant was found to have a reasonable expectation of privacy in his small, zippered bag, which was located within his closed athletic bag, presumably because the gambling devices were unlikely to fit inside the searched bags.  Id.

[7]    Keanaaina contends that the backpack "had all the indicia of the backpack of a male," yet, beyond the color of the backpack, he does not specify what indicia would make the backpack that of a male versus that of a female.

property of one or the other of the occupants of the structure, and the defendant had ties to the residence, so the search of the backpack was not improper" was not wrong.

## B. Any Error in Failing to Immediately Excuse a Juror Who Knew a Witness Was Harmless.

Keanaaina contends that Juror #7 should have been immediately dismissed for cause when she disclosed to the Circuit Court that one of the police officers who had just testified (Police Officer Witness) was her neighbor, and that Juror #7 knew some of Keanaaina's family members.[8]

Juror #7 apparently did not recognize the Police Officer Witness's name when it was read and only after she had watched the Police Officer Witness testify in person did Juror #7 recognize him and bring the matter to the Circuit Court's attention. The Circuit Court instructed Juror #7 not to discuss the matter with the other jurors and did not immediately dismiss her. Later in the trial, after the Circuit Court conducted a second colloquy with Juror #7, she was excused for cause before jury deliberation, and the Circuit Court again admonished her not to discuss the matter with other jurors.

Jurors are presumed to have followed the Circuit Court's instructions. See, e.g., State v. Holbron, 80 Hawaiʻi 27, 46, 904 P.2d 912, 931 (1995) (holding that there is a "sound presumption of appellate practice that jurors are reasonable and generally follow the instructions they are given.") (citation, internal quotation marks and brackets omitted); State v. Austin,

---

[8] Keanaaina contends that he is awaiting approval to view the Third Circuit Court's bench book, in which he apparently expects there to be language similar to the New Jersey's Judiciary Bench Manual on Jury Selection that he attached to his Opening Brief. First, New Jersey's manual provides "procedural and operational guidance," and does not require even New Jersey judges to follow the policies to the letter. New Jersey Judiciary Bench Manual on Jury Selection i (Dec. 4, 2014), https://www.njcourts.gov/pressrel/2014/Bench%20Manual%20on%20Jury%20Selection%20-%20promulgated%20Dec%204%202014.pdf (last visited March 30, 2020) (emphasis added). Second, even New Jersey's policies do not prohibit the Circuit Court's actions in this case; instead, judges "are given substantial deference" as to whether to excuse or rehabilitate jurors, even though rehabilitation is not "preferred." Id. at 35. Finally, Keanaaina presents no authority making New Jersey's bench book binding on the courts of this state.

70 Haw. 300, 308, 769 P.2d 1098, 1102 (1989) ("A jury is presumed to follow a trial court's directive, so any prejudice was eliminated."). Therefore, it is presumed that Juror #7 did not talk to other jurors about the reasons she was eventually excused for cause.

Because Juror #7 was excused before deliberations and we may presume no disclosure of the reasons she was excused was made to the remaining jurors, any error in not excusing Juror #7 midtrial was fully alleviated. The Circuit Court did not abuse its discretion by not immediately excusing Juror #7.

**C. Defense Counsel Was Not Ineffective for Failing to Object to Questions During Cross-Examination.**

Keanaaina contends that he received ineffective assistance of counsel when his trial counsel, despite Keanaaina's Motion to Exclude Crimes, Wrongs, or Acts (Order to Exclude) having been granted, failed to object to the prosecution asking Keanaaina to identify drugs and drug paraphernalia from photographs.

The Order to Exclude, consistent with the Hawaii Rules of Evidence (HRE) Rules 609[9] and 611,[10] prevented the State from introducing evidence of Keanaaina's criminal history absent Keanaaina opening the door to the issue. The Order to Exclude restricted the use of other crimes, wrongs, or acts for any purpose, however, thereby preventing the prosecution's use of

---

[9] HRE Rule 609(a) provides, in part,

> [I]n a criminal case where the defendant takes the stand, the defendant shall not be questioned or evidence introduced as to whether the defendant has been convicted of a crime, for the sole purpose of attacking credibility, unless the defendant has oneself introduced testimony for the purpose of establishing the defendant's credibility as a witness, in which case the defendant shall be treated as any other witness as provided in this rule.

[10] HRE Rule 611(b) provides, that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

such evidence under HRE Rule 404(b),[11] which permits presentation of evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

During direct examination, Keanaaina testified that he was aware that his girlfriend was a drug user, but he denied knowing that she was a drug dealer until after he reviewed the police report. On cross-examination, the State asked whether Keanaaina's knowledge of his girlfriend's drug use allowed him to recognize what certain drugs and drug paraphernalia -- including methamphetamine pipes, straw scoopers, digital scales, plastic bags for holding methamphetamine -- looked like, and whether the amount of methamphetamine seized was "a lot." This line of questioning did not explore Keanaaina's criminal history but, rather, tested his credibility as a witness because the depth of his knowledge suggested that Keanaaina likely knew that his girlfriend was dealing drugs even before he read the police report, thereby impeaching Keanaaina by questioning the veracity of his testimony.[12] As such, the line of questioning was proper, and the failure to object was not evidence of ineffective assistance of counsel.

Furthermore, trial counsel could have made a tactical decision to not object. If counsel had objected to a question regarding Keanaaina's knowledge of his girlfriend's criminal activities, it could have suggested to the jury that evidence existed of Keanaaina's criminal activities. "Specific actions or

---

[11]     HRE Rule 404(b) provides, in part:

> **Other crimes, wrongs, or acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident[.]

[12]     HRE Rule 607 provides, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness."

omissions alleged to be error but which had an obvious tactical basis for benefitting the defendant's case will not be subject to further scrutiny." Briones v. State, 74 Haw. 442, 462-63, 848 P.2d 966, 976 (1993) (emphasis in original) (citing State v. Tyrrell, 60 Haw. 17, 29, 586 P.2d 1028, 1036 (1978)).  Given that this line of questioning was not inconsistent with Keanaaina's theory of the defense, which was that the police, in removing articles from the two backpacks placed the drugs from the woman's backpack into his own, objecting to this line of questioning may have undercut that theory.  Objecting to questions eliciting that Keanaaina knew what certain drugs and paraphernalia looked like could have left the impression the defense sought to hide knowledge that did not incriminate him in this situation.

Trial counsel was not ineffective for failing to object to the line of questioning on cross-examination.

## D.    The Introduction of Evidence Obtained Through Execution of the Search Warrant Was Not Error.

Keanaaina contends that it was not harmless error to introduce the evidence seized from the search because his conviction was for crimes that all required possession of a controlled substance.  However, because the evidence was properly admitted, there was no error, and Keanaaina's argument is without merit.

## VI. CONCLUSION

For the foregoing reasons, the November 17, 2017 Judgment of Conviction and Sentence entered by the Circuit Court of the Third Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, April 13, 2020.

On the briefs:

Victor M. Cox,
for Defendant-Appellant.

Stephen L. Frye,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Alexa D.M. Fujise
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge

13